Robert L. STOUT, Isabelle A. Stout (In the Matter of the Petition of Robert L. STOUT and Isabelle A. Stout to adopt John Joe Bowling, A Minor), Appellants.

v.

TIPPECANOE COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee.

No. 2–176A14.

Court of Appeals of Indiana, Second District.

Oct. 15, 1979.

■

---

Robert Leirer Justice, Logansport, George E. Weigle, Lafayette, for appellants.

H. Hanley Hammel, Jr., Lafayette, for appellee.

SHIELDS, Judge.

Stouts appeal from summary judgment granted by the trial court in favor of the Tippecanoe County Department of Public Welfare [Department] in an adoption proceeding in which Stouts sought adoption of a minor ward of the Department. The trial court granted summary judgment based on the Department's refusal to consent to the adoption and its refusal to place the child in the Stouts' home. We reverse and remand.

The trial court summarized in its findings of fact the particulars resulting in this appeal:

1. John Joe Bowling, minor subject of the petition, was born November 8, 1972, handicapped by some degree of mental retardation, coupled with mild sensory-perceptual motor deficiency.

2. He was first cared for by his mother, then by his maternal grandmother, following which he was made a ward of the Department of Public Welfare.

3. In July, 1973, he was placed by the Department with Charles R. and Pauline Kyees, as a temporary foster home placement, and the Kyees were informed that the Department would seek a suitable adoptive home.

4. In April, 1974, the Department advised Kyees of a proposed adoptive home placement outside of the county. By this time the Kyees had lavished much care upon the child and he had made excellent progress. Although the Department had emphasized that they would not be considered as prospective adopting parents, the Kyees had become so emotionally involved with the child that they could not accept the proposed placement, and they promptly filed a petition to adopt him, together with a petition to waive the requirement of prior written approval by the Department. After an extended hearing, the Kyees' petitions were denied.

5. The child remained with the Kyees as a foster home placement, and their attorneys sought to persuade the Department to abandon plans for placement outside the county and seek a local adoptive placement, allowing Kyees to maintain contact with him.

6. In May, 1975, the Department arranged certain visits by the child with their prospective adopting couple.

Meanwhile, Kyees' attorneys located another prospective adoption couple (Robert and Isabelle Stout, Petitioners herein) and arranged certain visits with them.

7. Late in July, the Department arranged for the child to visit their prospective adopting couple over the weekend August 2–3 and notified the Kyees. On the advice of their attorneys, the Kyees removed the child from the state for approximately ten (10) days. Immediately thereafter the Stouts filed their petition for adoption and the Department filed a petition to cite Kyees for contempt.

8. Finally, on August 9, the Department removed the child from Kyees' home and placed him with their prospective adopting couple.

Stouts' adoption petition complied with the procedural requirements of IC 31–3–1–2[1] and, pursuant to subsection (5)(d), named the Department as custodian of the child. Stouts also filed a motion to waive consent of the Department to the adoption. The Department responded with its motion for summary judgment supported by the affidavit of the Department's director, in which he averred:

John Joe Bowling . . . was made a ward of the County Department of Public Welfare.

*Said ward has never been placed* in the home of the petitioners as a proposed adoptive home, and said *Department has no intention of so placing said ward.* According to the policies and practices of said Department, as approved by the County Board of Public Welfare of Tippecanoe County, Indiana, the home of the petitioner is not eligible or qualified for placement of said ward as a proposed adoptive home. [Emphasis added.]

In a memorandum in support of summary judgment the Department further urged

---

1. The statute in effect at the time of disposition of this case below is found at Acts 1974, Public Law 133, § 1, reading in part: "The petition shall specify: . . . (5)(d) the name of the court or agency of which the child is a ward if he be a ward." This section was further amended by Acts 1975, P.L. 294 § 1 effective January 1, 1976 and can be found in Burns Code Ed.1978 Supp.

Department consent to the adoption was a statutory prerequisite to granting Stouts' petition.

In granting summary judgment in favor of the Department the trial court framed the issue to be:

whether persons seeking to adopt a minor ward of the Department whose parental rights have been terminated may proceed without prior written approval of placement, or placement of the child with them and without consent to adoption and litigate their petition for adoption as against a separate placement made and approved by the Department.

Stouts challenge the summary judgment on several grounds, but dispositive of this appeal are the following:

1. Whether the trial court, under the Indiana adoption act, in particular IC 31–3–1–6 and 31–3–1–7 [Burns Code Ed.1978 Supp.], must dismiss a petition seeking adoption of a ward of the Department of Public Welfare when the Department refuses to consent to the proposed adoption without first determining whether consent is being unreasonably withheld.[2]

2. Whether IC 31–3–1–3 [Burns Code Ed.1978 Supp.] requires placement of a child by the Department in the proposed adoptive home as a prerequisite to the trial court's consideration of the merits of an adoption petition.

*Scope of Review*

■ The purpose of summary judgment is to provide a speedy determination of whether a genuine issue of fact is present and must be resolved. 3 *Harvey, Indiana Practice,* 542 (1970). Indiana Rules of Procedure, Trial Rule 56(C) therefore permits summary judgment only when the pleadings, affidavits, depositions, etc. show "there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." The party seeking summary judgment must establish the absence of a material factual dispute. Accordingly, the trial court, in determining the propriety of summary judgment, must examine the evidence in a light favorable to the non-moving party, resolving any doubts against the moving party. *Petro v. McCullough,* (1979) Ind. App., 385 N.E.2d 1195; *Crase v. Highland Village Value Plus Pharmacy,* (1978) Ind. App., 374 N.E.2d 58.

■ When reviewing a summary judgment, the appellate court applies this same standard, and will reverse if the record discloses either an unresolved issue of material fact or an incorrect application of the law. *Brandon v. State,* (1976) 264 Ind. 177, 340 N.E.2d 756; *Richards v. Goerg Boat and Motors, Inc.,* (1979) Ind.App., 384 N.E.2d 1084.

Indiana Code 31–3–1–8 [Burns Code Ed. 1978 Supp.] requires prior to granting a petition for adoption, the trial court determine:

(a) that the adoption prayed for is for the best interest of the child;

(b) that the adopting parent or parents are of sufficient ability to rear the child and furnish suitable support and education;

(c) that the report of such investigation [IC 31–3–1–4][3] and recommendation has been filed; and

(d) that proper consent, if any be necessary, to the adoption has been given.

Stouts presented uncontradicted evidence the proposed adoption was in the child's best interest and they would be able to furnish suitable support and education. In addition, Stouts requested the court dispense with Department consent and order the Department to inspect and supervise Stouts' home and file its report. Despite this uncontradicted evidence and Stouts' re-

2. The amendments to sections six and seven accomplished by Acts 1975, P.L. 295 §§ 1 and 2, became effective May 1, 1975. Subsequent citations to IC 31–3–1–6 and 31–3–1–7 are to Burns Code Ed.1978 Supp.

3. The statute governing such investigations and recommendations at the time of disposition of this case below is found at Acts 1974, Public Law 133, § 2.

quest for a hearing concerning necessity of Department consent, the trial court determined Department consent to both placement and adoption was an absolute prerequisite to further consideration of Stouts' adoption petition. Thus, Stouts' failure to establish that consent entitled the Department to a judgment as a matter of law.

I.

*Consent of the Department to Adoption of its Ward Cannot be Unreasonably Withheld*

Indiana Code 31–3–1–6 requires the proposed adoptive parents establish the written consent of, among others, "any person, agency or county department of public welfare having lawful custody of the child whose adoption is being sought."[4] The necessity of agency consent is qualified, however, by subsection (g)(6) of that section which obviates the need of consent from "[a]ny legal guardian or lawful custodian of the person to be adopted *other than a parent* who has failed to respond in writing to a request for consent for a period of sixty (60) days or who, after examination of his written reasons for withholding consent, is found by the court to be unreasonably withholding his consent." [Emphasis added] Section six would therefore require consent of the Department, as lawful custodian, as a prerequisite to adoption, absent the Department's failure to respond for sixty days to a request for its consent or a determination by the trial court that consent is being unreasonably withheld.

The Department responds, however, that when section six is read in conjunction with IC 31–3–1–7 allowing for termination of parental rights, a different result obtains. When custody is awarded the Department through termination or relinquishment of parental rights under IC 31–3–1–7, the Department is placed *in loco parentis* with the child, possessing the same power as the natural parent to withhold consent. In support of this interpretation, the Department emphasizes subsection (a) of IC 31–3–1–7 providing "[t]he rights of a parent . . . with reference to a child, including *parental right to control or consent to an adoption,* may be relinquished or terminated [in favor of a county department of public welfare] in or prior to an adoption proceeding as provided in this section.[5] [Emphasis added.]

▮ The statutory procedure allowing adoption of children reflects the state's concern for the "care and protection of infants who have been abandoned, neglected or mistreated." *Aramovich v. Doles*, (1964) 244 Ind. 658, at 665, 195 N.E.2d 481, at 485. The paramount consideration in any adoption proceeding is, therefore, the best interest of the child. *In re Adoption of Infants Reynard*, (1969) 252 Ind. 632, 251 N.E.2d 413; *Aramovich v. Doles; Rhodes v. Shirley*, (1955) 234 Ind. 587, 129 N.E.2d 60; *In re Adoption of Dove*, (1977) Ind.App., 368 N.E.2d 6. The responsibility for making this determination rests, under authority of the statute, solely with the trial court, guided by the factors set forth within the act.

---

4. IC 31–3–1–6(a)(3) [Burns Code Ed.1978 Supp.]

5. Although both parties to this appeal premise their arguments upon the Department's status through relinquishment-termination procedure of IC 31–3–1–7, the record does not indicate the means by which the Department effected custody, the findings of the trial court noting only that the child was a ward of the Department. However, the Department urges that it has acquired a status preferred to that of legal custodian because of relinquishment/termination of parental rights. To remand this cause to the trial court for a determination of the means by which the Department obtained custody would not alter the result reached herein but would only further delay consideration of Stouts' appeal. We will therefore consider the issues as the parties do, assuming the Department obtained custody under authority of IC 31–3–1–7. [Burns Code Ed.1978 Supp.], repealed effective October 1, 1979 by Acts 1978, P.L. 136, § 57. For new law, *see* IC 31–6–5–1 et seq. [Burns Code Ed.1978 Supp.]

Under the procedure of IC 31–3–1–7, the result is the same regardless of whether the natural parent voluntarily relinquishes his right or the trial court, after hearing, terminates that right—both terminate all rights of the natural parent, including the power to consent to adoption.

*See* I.C. 31–3–1–8 [Burns Code Ed.1978 Supp.].

The most protected status in any adoption proceeding is that of the natural parent. Recognizing the fundamental importance of the parent-child relationship, our courts have strictly construed the statute to preserve that relationship. *In re Adoption of Bryant*, (1963) 134 Ind.App. 480, 189 N.E.2d 593. However, even the status of natural parent, though a material consideration, is not one which will void all others, and, under carefully enumerated circumstances, the statute allows the trial court to dispense with parental consent. IC 31–3–1–6(g)(1–5, 7, 8).[6]

Those circumstances allowing the trial court to dispense with parental consent—e. g., abandonment, incompetency, termination of parental rights,—apply only to a natural parent. These factors have no meaning when applied to an institution having custody of the child. Therefore, to hold termination of parental rights transforms the Department from a guardian or legal custodian, whose consent is conditioned under IC 31–3–1–6(g)(6), to a natural parent, whose consent is conditioned under IC 31–3–1–6(g)(1–5, 7, 8), in essence grants the Department an absolute power to withhold consent—a power not even held by the natural parent. To grant the Department unbridled discretion in withholding its consent to adoption would elevate the Department to a status preferred over that of even a natural parent, a result we think the legislature did not intend.

We are further persuaded by the reasoning of other jurisdictions construing similar statutory provisions. Perhaps the most cited case is the Ohio Court of Appeals decision of *In re Haun*, (1972) 31 Ohio App.2d 63, 286 N.E.2d 478. When the decision was written, the Ohio statute allowed no final adoption decree to be entered absent consent of the department having custody of the child. Ohio Rev.Code Ann. § 3107.06 [Page Ed.1972]. Although the statute ostensibly did not limit the agency's power to withhold consent, the Ohio Court of Appeals nevertheless held the agency's power subject to judicial scrutiny to determine if it was being exercised reasonably. The court observed to allow the agency unlimited discretion would make agency consent

> superior to all other considerations, even those which in the contemplation of R.C. 3107.09, are clearly of the gravest importance . . . concern with the adoptive parents being 'suitably qualified to care for and rear the child . . .' and that ' . . . the best interest of the child would be promoted by the adoption, . . . ' [concerns which] obviously epitomizes the most fundamental factors in the adoption policy decreed for Ohio.

31 Ohio App.2d at 67, 286 N.E.2d at 481.

This rationale was affirmed by the Ohio Supreme Court in *State ex rel Portage County Welfare Department v. Summers*, (1974) 38 Ohio St.2d 144, 311 N.E.2d 6, and followed by the Ohio Court of Appeals in the later case of *In re Harshey*, (1974) 40

---

**6.** At the time of disposition of Stouts' petition, the trial court could dispense with parental consent upon finding (1) the child had been abandoned or deserted, or a non-custodial parent had, without justifiable cause, failed to communicate significantly with or willfully failed to support the child, or the parent(s) had made only token efforts to support or communicate with the child; (2) the parent was the natural father of a child born out of wedlock whose paternity had not been established by a court proceeding; (3) the parent had relinquished his right to consent or his parental rights had been terminated by the court under provisions of IC 31–3–1–7; (4) the parent had been judicially declared incompetent or mental-

ly defective; (5) the child had been declared abused, dependent or neglected by a court proceeding, and the parent(s) being deprived of custody for two years prior to filing a petition to terminate parental rights, the court finding there has been little or no change in the environment since the child was removed; (6) the parent(s) suffer a disability from habitual use of alcohol or a controlled substance under IC 35–24.1–2–4 et seq. and petitioner shows the disability renders the parent(s) unable to care for and control the child. IC 31–3–1–6 [Burns Code Ed.1978 Supp.]

This section has been amended by Acts 1978, Public Law 136, § 28, effective October 1, 1979.

Ohio App.2d 157, 318 N.E.2d 544.[7] In the *Harshey* decision, the Ohio Court of Appeals further explained the distinction judicially drawn between agency consent and parental consent. The agency's power to withhold consent was properly qualified because

the adoption of a child whose custody has been entrusted to an agency for the purpose of adoption does not involve the serious consequences of severing the natural parent to child relationship. Unlike parental consent, agency consent is simply an additional safeguard to the child's welfare. 40 Ohio App.2d at 162, 318 N.E.2d at 548 (citations omitted).

The Ohio legislature subsequently amended Ohio's adoption act to specifically allow the type of judicial review adopted by the above appellate decisions. Section 3107.07 of the Ohio Revised Code, analogous to IC 31–3–1–6(g) dispenses with the consent of

[a]ny legal guardian or lawful custodian of the person to be adopted, . . . who has failed to respond in writing to a request for consent, for a period of thirty days, or who, after examination of his written reasons for withholding consent, is found by the court to be withholding his consent unreasonably. Ohio Rev.Code Ann. § 3107.07 [Page 1978 Supp.]

Appellate courts in Illinois and Oklahoma, construing similar statutes, have approved the reasoning of the *Haun* decision. The Illinois Court of Appeals, in *Stines v. Vaughn*, (1974) 23 Ill.App.3d 511, 319 N.E.2d 561, held a facially absolute requirement of agency consent, did not deprive the trial court of authority to review agency denial, reasoning this provision must be read in conjunction with an additional statutory provision making the welfare of the child the prime consideration in all adoption proceedings. Citing the *Haun* decision, the Illinois Court of Appeals held when the natural parents are not contestants, the welfare of the child is the trial court's only

concern. 23 Ill.App.3d at 519, 319 N.E.2d at 567. The same interpretation was adopted by the Oklahoma Supreme Court in *State ex rel Department of Institutions, Social and Rehabilitative Services v. Griffis*, (1975) Okl., 545 P.2d 763. Approving the reasoning of the Ohio Court of Appeals in *Haun*, the Oklahoma Supreme Court observed that even parental consent could be excused under the statute, and to hold department consent as absolute would place the relationship of department and child upon a "higher plane" than that of parent and child. 545 P.2d at 767. *See generally*, Annot., 83 ALR3d 373 (1978).

A further indication the Indiana legislature did not intend termination of parental rights to vest the Department with the power of a natural parent to withhold consent, is found in the newly enacted procedure for terminating the parent-child relationship, effective October 1, 1979. IC 31–6–5–1 et seq. (Burns Code Ed.1978 Supp.). The new provision emphasizes the effect of termination upon the rights of the natural parent, indicating more clearly than the language of the present statute, that the status of the Department is in no way elevated as a result. In particular, IC 31–6–5–6 provides that when the parent-child relationship is terminated

all rights, powers, privileges, immunities, duties and obligations (including any rights to custody, control, visitation, or support) pertaining to that relationship are permanently terminated, and the *parent may not contest the child's adoption.* (emphasis added)

When parental rights are terminated, the Department, as custodian of the adoptive child, occupies an important role in the adoption process. The Department becomes *in loco parentis* to its ward in order to find a suitable adoptive home, and by its expertise, aid the trial court in determining the child's best interest.[8] The ultimate de-

---

7. Subsequent appeal on the merits found at 45 Ohio App.2d 97, 341 N.E.2d 616 (1975).

8. *Cf., Matter of Perkins,* (1976) Ind.App., 352 N.E.2d 502, at 507. [In an appeal from ward-

ship decree, Court of Appeals observed the purpose of wardship petition for adoption purposes to be elimination of necessity of parental consent in a subsequent adoption, placing the

cision as to the child's best interest, however, rests with the trial court. *See Johnson v. Cupp*, (1971) 149 Ind.App. 611, 274 N.E.2d 411. We therefore hold the Department's power to withhold consent to adoption, regardless of the means by which the Department obtained custody, is qualified by IC 31–3–1–6(g), allowing the trial court to dispense with the consent of a guardian or custodian.

## II.

*Placement is not a Statutory Prerequisite to a Determination of the Merits of the Stouts' Petition*

In support of its motion for summary judgment, the Department stated it had not placed the child in Stouts' home, nor did it intend to do so. Further, according to Department policies, the Stout home did not qualify for placement.[9] On appeal, the Department urges that "without such . . placement . . . the statutory law provides that no petition for adoption can be granted." Stouts respond the Department's opinions and recommendations are advisory only, but at least the trial court should have conducted a hearing to determine if placement could be waived.

When interpreting a statute, the words and phrases are to be accorded their plain, ordinary and usual meaning. IC 1–1–4–1 [Burns Code Ed.1978 Supp.]; *Park 100 Development Co. v. Indiana Department of State Revenue*, (1979) Ind.App., 388 N.E.2d 293, 295; *State v. Turner*, (1979) Ind.App., 386 N.E.2d 208, 209. Examining the placement provision under this standard, we hold placement is not a prerequisite to a determination of the merits of Stouts' petition.

Section 31–3–1–3 [Burns Code Ed.1978 Supp.] provides:

[e]xcept in the case of a child sought to be adopted by a stepparent, a child sought to be adopted by a blood relative,

Welfare Department in an *in loco parentis* status to the child.]

. . . or where the court in its discretion . . . has waived the requirement for prior written approval, no child shall be placed in a proposed adoptive home without the prior written approval of such placement by a duly-licensed child-placing agency or a county department of public welfare . . . . Such approval shall be filed along with the petition for adoption.

The above section speaks *only* to approval of placement when placement is made or sought. As the Department correctly contends, placement of a proposed adoptive child requires the approval of either a licensed child-placing agency or a county department of public welfare. But at the same time, as Stouts urge, the statute allows the trial court in its sound discretion to waive prior approval by the agency or department. However, contrary to the Department's interpretation, neither this section nor our adoption act in general requires placement as an absolute prerequisite to the trial court's determination of the merits of an adoption.

The determinants of an adoption are set forth at IC 31–3–1–8 [Burns Code Ed.1978 Supp.]. That section requires that, prior to granting an adoption, the trial court find:

(a) that the adoption prayed for is for the best interest of the child;

(b) that the adopting parent or parents are of sufficient ability to rear the child and furnish suitable support and education;

(c) that the report of such investigation and recommendation has been filed; and

(d) that proper consent, if any be necessary, to the adoption has been given.

█ Although certainly a desirable method of realizing the best interests of the child, placement by a licensed agency or department is not made a condition to the

9. The Department offered no evidence either to define their placement policies or to explain why Stouts did not qualify under these policies.

trial court's decision of the merits of an adoption.[10]

Further, in writing IC 31–3–1–2,[11] the Indiana legislature envisioned placement by a licensed child-placing agency or county department of public welfare may not have been made or sought at the time of filing the adoption petition. Subsection six of this section requires the adoption petition state the "period of time during which the child has lived in the home of the persons petitioning *if there be such period*."[12] [Emphasis added.]

■ In those jurisdictions we have found in which placement by the welfare department or child-placing agency is a prerequisite to adoption, the statutes specifically provide for this requirement.[13] We therefore hold placement by the Department in the Stouts' home was not a prerequisite to the trial court's consideration of the merits of Stouts' petition.

### III.

### STOUTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Stouts challenge the trial court's denial of their motion for partial summary judgment seeking to proceed to a determination of the merits of their petition. Specifically Stouts requested (1) an investigation of their home by a neutral agency; (2) a hearing to resolve the issue of placement; (3) submission by the Department of its reasons for with-holding consent; (4) a preliminary injunction returning the child to the home of either the Kyees or the Stouts pending a determination of the merits.

Our reversal of the summary judgment granted in favor of the Department resolves the major requests in Stouts' petition for partial summary judgment thereby rendering these issues moot. Stouts, however, also appeal denial of their request for a preliminary injunction.

■ When challenging the denial of a preliminary injunction, appellants must establish the trial court acted arbitrarily or abused its discretion. Ind. Rules of Procedure, Trial Rule 52; *Negley v. Lebanon Community School Corp*, (1977) Ind.App., 362 N.E.2d 178, at 180; *City of Muncie v. Pizza Hut of Muncie, Inc.*, (1976) Ind.App., 357 N.E.2d 735, at 736. Stouts, however, assert only general allegations of error, failing to support their conclusions with the bases of error. The trial court's alleged error in denying their request for a preliminary injunction is therefore waived. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7); *Jaremczuk v. State*, (1978) Ind. App., 380 N.E.2d 615, at 617; *Midwest Emery Freight System, Inc. v. IMC, Inc.*, (1977) Ind.App., 363 N.E.2d 1078, at 1080; *Southerland v. Calvert*, (1974) 162 Ind.App. 606, at 610, 320 N.E.2d 803, at 805–6.

The summary judgment in favor of the Department is reversed and remanded to the trial court to determine whether the Department is unreasonably withholding its

---

**10.** Subsections (b) and (c) of IC 31–3–1–8 further reveal the legislative preference for prior placement in the proposed adoptive home. Often the decisions involved with in these subsections cannot be resolved absent placement of the child in the proposed adoptive home.

**11.** Acts 1974, P.L. 133, § 1, *supra* slip op. at 4, footnote 1.

**12.** This language was not changed by the subsequent amendment to this section. See IC 31–3–1–2(6) [Burns Code Ed.1978 Supp.].

**13.** *See, e. g.*, Ky.Rev.Stat. § 199.470(4) (1970) "[n]o petition for adoption shall be filed unless prior to the filing of the petition the child sought to be adopted has been placed for adoption by a licensed child-placing institution or agency or by the department . . . .."; Del.Code Ann. tit. 13, § 904 (1974 Rev.Ed.) "[n]o petition for adoption shall be presented unless prior to the filing of the petition the child sought to be adopted has been placed for adoption by an authorized agency or by the Department of Health and Social Services . . . .."; Conn.Gen.Stat.Ann. tit. 45, § 63 (West 1979 Supp) "[n]o application for the adoption of a minor child not related to the adopting parents shall be accepted by the court of probate unless the child sought to be adopted has been placed for adoption by the commissioner of the department of children and youth services or a child-placing agency. . . . ."

consent to the proposed adoption and, if so, to take further appropriate action pursuant to that consideration statutorily deemed paramount in an adoption action—the best interest of the child.[14]

BUCHANAN, C. J., and SULLIVAN, J., concur.

14. We note, as did Judge Staton in *Unwed Father v. Unwed Mother*, (1978) Ind.App., 379 N.E.2d 467, at 472, that "[u]nfortunately, the best interest of the child in this case may have also been thwarted." John Joe was three years of age at the time of the trial court disposition. Stouts' appeal has been pending for three years, during which time the child has apparently been living with the adoptive parents chosen by the Department. At this point, the length of time spent with the other adoptive parents must be an important factor in a determination of the child's best interest.