**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 07 2013, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAN MICHELSON**
Ogletree Deakins Law Firm
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ANDREA R. TREVINO**
Beckman Lawson, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE:  THE ADOPTION OF T.W., ) | |
| ) | |
| T.J., ) | |
| ) | |
| Appellant-Respondent, ) | |
| ) | |
| vs. ) | No. 02A05-1108-AD-451 |
| ) | |
| J.B., ) | |
| ) | |
| Appellee-Petitioner. ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D01-0910-AD-161

**February 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

T.J. ("Father") appeals the trial court's post-hearing order concluding that his consent to the adoption of his child, T.W., is not required under Indiana Code Section 31-19-9-8. Father presents several issues for our review, which we consolidate and restate as whether the evidence is sufficient to support the trial court's determination.

We affirm.

## FACTS AND PROCEDURAL HISTORY

T.B. ("Mother") gave birth to T.W. on August 10, 1999. Mother and Father were not married, but Father "acknowledged T.W. as his own before her birth, [and he] was excited and happy when he learned [Mother] was pregnant[.]" Brief of Appellant at 11. Father cared for and visited with T.W. on a sporadic basis after she was born, including infrequent overnight visits, but he did not provide any financial support for T.W. Mother estimated that Father cared for T.W. approximately 15% of the time during the first few years of her life. Mother and her parents cared for T.W. the rest of the time. Father did not provide Mother with non-financial support, such as diapers or formula.

Father's paternity of T.W. was established by court order in October 2001, and the trial court granted Mother sole custody of T.W. and awarded parenting time to Father. The trial court ordered Father to pay $56 per week in child support, retroactive to September 28, 2001. To date, Father has not paid any court-ordered child support.

Father was intermittently employed for short periods of time after T.W.'s birth, earning up to $15.65 per hour at one full-time job, but he voluntarily quit two jobs and went for several months at a time without employment. Father lived with his parents and

2

had no living expenses. In 2001, Father committed armed robbery. In 2002, he was sentenced to ten years in federal prison. During his incarceration, Father received nominal wages and maintained a balance of approximately $750 per year in his prison account from gifts from family and friends.

In the meantime, Mother married J.B. ("Stepfather") on June 18, 2009. And on October 8, 2009, Mother and J.B. filed a petition for adoption of T.W. by Stepfather. In that petition, Mother and Stepfather asked the trial court to waive Father's consent under Indiana Code Section 31-19-9-8. Father filed a motion to contest the adoption of T.W. by Stepfather. Following an evidentiary hearing on the issue of Father's consent, the trial court entered its order, concluding that Father's consent to T.W.'s adoption was not required ("Order"). In particular, the trial court concluded that Mother and Stepfather had not established by clear and convincing evidence that Father had failed to communicate with T.W. without justifiable cause when he was otherwise able to do so. But the trial court concluded that Father's consent to the adoption was not required because he had knowingly failed to provide for the care and support of T.W. when able to do so for a period of at least one year. The Order provides, in relevant part:

> 37. At or around the time of the child's birth, the Respondent Father was a student at Vincennes University. He left college and returned to live with his parents in Fort Wayne in the summer of 1999. On or about June, 2000 he was employed at the Auburn Foundry earning $15.65 per hour. He retained that job for two to three months. He voluntarily terminated that position due in part to the distance of the foundry from his home. Months later he secured a job with Kitty Hawk at the Fort Wayne airport where he earned ten dollars per hour. A few months thereafter he left that job. Then, while on home detention he returned to employment at Kitty Hawk. However, he was involuntarily terminated from that position a few weeks later.

3

38.    From a time prior to the child's birth in 1999 until February 2000 the Respondent Father remained in a relationship with the child's mother. Although there is no record that the Respondent signed a paternity affidavit at the hospital, he was present at the child's birth and by his actions acknowledged himself to be the father. On occasions he transported the child from day care while the mother was in school or at her employment. Before and after the paternity adjudication and until his incarceration he visited the child. By the mother's estimate, he provided for approximately fifteen per cent (15%) of the time required for child care. From the Mother's testimony the Court finds that the Respondent Father did not provide diapers, formula, or other necessities. <u>He did not financially contribute to the child's support</u>.

39.    Following his incarceration he received standard prison wages of $5.25 per month and an occasional bonus. In his testimony he estimated that he was paid approximately ten dollars ($10.00) every month. He also was provided $750.00 every year in his community account. Toiletries and other gifts cannot be received from an inmate's family or friends. Instead only financial gifts to his account were permitted. From his account the Father was required to purchase his own soap, toothpaste, deodorant, and other personal items. Paper, stamps, pens and other means of communication, including telephone calls, were also charged to his account.

40.    Although he received some financial gifts from his family, the Father's ability to pay support was limited to his financial resources. The Petitioner asserts that the Father failed to enroll in the Bureau of Prisons' Inmate Financial Responsibility Program. That program permits an inmate to meet their financial obligations, including child support, while they are in prison. By the terms of the program, Prison officials have an affirmative duty to (a) provide inmates information about the program at their admission, (b) determine whether an inmate has sufficient institutional earnings to make the minimum payment of $25.00 per quarter, and (c) assist the inmate in developing a financial plan. Before any funds may be applied as payments under the program, the prison officials must calculate the total funds deposited into an inmate's trust fund less the amount of $450.00 for the previous six month period. Any remaining funds may be applied to the program. (Respondent's exhibit U).

41.    The Court finds from the Father's testimony th[at] he was not advised of the aforementioned program when he was first incarcerated and his income never exceeded the minimum necessary for his qualification.

4

42.     The Father has not paid any support for the child and as of March 11, 2010, was in arrears in his court ordered obligation in the amount of $24,640.00 (Petitioner's Exhibit 3).  He has not paid his proportional share of the child's birth expenses or the costs for the genetic paternity testing.

43.     This Court acknowledges that the Respondent's child support arrearage largely accrued while he was in prison.  The Court finds and concludes that he did not have the financial resources to provide for the child's support during the period of his incarceration.  A different analysis is required however, for the period prior to his incarceration and for the months since his release to home detention.  It is settled law in Indiana that fathers have a common law duty to provide for their child's support apart from any court order or statute (In re A.K.S. 713 N.E.2d 896, (Ind. Ct. App. 1999).  However, the fathers in A.K.S. and most other cases cited for that proposition were either adjudicated fathers or had signed a paternity affidavit at [the] time of the child's birth.  In this case, paternity was not adjudicated until a few months before the Respondent Father's incarceration.  However, based on the case law cited herein, this Court concludes that the one year[-]time period prescribed as a precondition to obviate his consent to adoption under IC 31-19-9-8(a)(2) is not limited to the period after a formal paternity acknowledgement or adjudication.  Thus, the years following the child's birth and prior to the adjudication of paternity may also be considered.  A father's "failure to provide support for a child whom he acknowledged as his own establishes that he has failed to support his child "as required by law or judicial decree." [Irvin v. Hood, 712 N.E.2d 1012 (Ind. Ct. App. 1999)].  While the father in Irvin had signed a paternity affidavit, the court cited as precedent for their ruling the case of In re Adoption of T.H. 677 N.E.2d 605 (Ind. Ct. App. 1997).  In that case the one[-]year period was applied against the natural father even though he had not had the opportunity to formally acknowledge paternity.

44.     Adoption statutes must be strictly enforced (J.M. v. M.A., 928 N.E.2d 230, 236 (Ind. Ct. App. 2010)).  Therefore, before the Petitioner's prayer can be granted, this Court must find by the clear and convincing evidence that each of the statutory requirements of IC 31-19-9-8(a)(2)(B) have been established.  In determining whether a parent has failed to provide for a child's support the Court may consider the provision of items in substitution of financial support.  In the case of M.W. v. A.W. 933 N.E.2d 909 (Ind. Ct. App. 2010)[, transfer granted, opinion of Court of Appeals adopted, 941 N.E.2d 1042 (Ind. 2011)]., the Court found that the "'duty of support' might be defined in non-monetary terms."  (At 914).  The court concluded that Mother's provision of "housing, clothing, food, and other necessities" (at 914) was sufficient.  However, an alternate conclusion was reached in the case of M.A.S. v. Murray, 815 N.E.2d 217

(Ind. Ct. App. 2004). In a footnote to its ruling the Court in M.A.S. rejected the father's argument that he met his support obligation through the provision of occasional groceries, diapers, cash, and other material items. The two cases are readily reconciled and establish a range of considerations that are instructive to the present case. In the former, the mother was determined to have a negative child support obligation under the Indiana Child Support Guidelines. She was significantly involved in the child's life and provided for the child's necessities when in her care. The Court considered the totality of the circumstances and determined that her provision of support was commensurate with her ability to provide. In the latter case, the court concluded that the father had sufficient income to pay a portion if not all of his child's support. Unlike the parent in M.W., he only occasionally provided groceries, formula, clothing, and other presents.

This Court concludes, therefore, that the provision of non-monetary items may be considered as support when they include necessities, are consistently provided by the parent, and are either in substitution for financial aid when the parent lacks those resources or are provided in addition to some level of child support.

45.     In the present case, the Respondent consistently acknowledged the child to be his. He visited her and may have occasionally provided her with a few material items. For the two and one-half years (2 ½) prior to his incarceration he held three different jobs. He lived with his parents and, by his testimony, the Court finds that he had no living expenses. He voluntarily terminated his employment twice. Despite earning ten dollars ($10.00) per hour in one job and in excess of fifteen dollars ($15.00) per hour in another, he paid nothing for the child's support. On October 30, 2001, the Allen Circuit Court applied the Indiana Child Support Guidelines and determined that he had the means to pay Fifty-six Dollars per week for the benefit of the child. Nevertheless, he has not paid any sums prior to his incarceration. Nor has he paid any sum in support between the date of his release to home detention in December 2010 and March 2011. Thus, for the two and one-half (2 ½) years prior to his incarceration, and for the months after his release, the Father has not provided any financial support and only limited non-monetary care for the child. Yet during that same period he had limited personal financial needs and had employment.

46.     Accordingly the Court finds and concludes that the Respondent knowingly failed to provide for the care and support of the child when able to do so as required by law for a period of at least one year.

THE COURT NOW ADJUDGES, ORDERS, AND DECREES that the Respondent's consent is not required pursuant to I.C. 31-19-9-8(a)(2)(B)

and the Respondent's motion to contest the adoption is dismissed pursuant to I.C. 31-19-10-6(2).

Appellant's App. at 19-21 (some emphases added). Father now appeals.

## DISCUSSION AND DECISION

Father contends that the trial court erred when it concluded that his consent to the adoption of T.W. is not required pursuant to Indiana Code Section 31-19-9-8(a)(2)(B). When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial court reached the opposite conclusion. In re Adoption of M.A.S., 815 N.E.2d 216, 218 (Ind. Ct. App. 2004). We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. Id. The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. Id.

The most protected status in any adoption proceeding is that of the natural parent. Stout v. Tippecanoe Co. Dep't of Public Welfare, 182 Ind. App. 404, 395 N.E.2d 444, 449 (Ind. Ct. App. 1979). Recognizing the fundamental importance of the parent-child relationship, our courts have strictly construed the statute to preserve that relationship. Id. However, even the status of natural parent, though a material consideration, is not one which will void all others, and under carefully enumerated circumstances, the statute allows the trial court to dispense with parental consent and allow adoption of the child.

Indiana Code Section 31-19-11-1 provides that the trial court "shall grant the petition for adoption and enter an adoption decree" if the trial court hears evidence and

finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, to the adoption has been given." According to Indiana Code Section 31-19-9-8(a):

> Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> * * *
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> * * *
>
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Mother and Stepfather were required to prove by clear and convincing evidence that Father's consent was not required. See In re Adoption of T.W., 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006).

Father contends that Mother and Stepfather did not prove by clear and convincing evidence that his consent was not required for failing to provide for the care and support of T.W. Specifically, he argues that Mother and Stepfather did not prove that he knowingly failed to provide for the care and support of T.W. when able to do so for a period of at least one year. But Mother and Stepfather presented evidence that, for at least two years, Father: voluntarily quit two jobs without first securing other employment; did not provide financial support for T.W. despite earning wages of up to $15.65 per hour, full time, while not having any living expenses of his own; and did not consistently provide significant non-monetary support for T.W. The evidence supports the trial court's conclusion that Father failed to provide for the care and support of T.W.

8

when able to do so for at least one year. Father's argument to the contrary amounts to a request that we reweigh the evidence, which we will not do.

Still, Father maintains that the evidence is insufficient to show that he had the means to pay support for T.W. In particular, Father contends that the trial court "had no proof of [Father's] income ([Stepfather] failed to provide it, although he could easily have obtained it from the IRS)," and the court "did not consider necessary and reasonable basic expenses of the contesting parent, such as gas, food, transportation, and insurance." Brief of Appellant at 17. In support of that contention, Father cites to In re Adoption of Augustyniak, 505 N.E.2d 868 (Ind. Ct. App. 1987). In that case, the prospective adoptive parent presented evidence that Father had made an average of $9,000 per year in income but had failed to pay child support. On appeal from the denial of his adoption petition, we held that the evidence of the father's income, "[s]tanding alone," was not sufficient to show his ability to pay the $20 per week child support obligation. Id. at 872.

But Father's reliance on Augustyniak is misplaced. We must consider the totality of the circumstances when determining a parent's ability to pay support. See In re Adoption of K.F., 935 N.E.2d 282, 288 (Ind. Ct. App. 2010), trans. denied. Here, again, Father testified that he had earned $15.65 per hour at a full-time job after T.W.'s birth, he had voluntarily relinquished two jobs without first securing other employment, and, from June 2000 through February 2002, when he lived with his parents, he "didn't have any living expenses." Transcript at 333. The evidence supports the trial court's determination that Father was able to pay financial support for T.W. but failed to do so for at least one year. See, e.g., Matter of Adoption of A.M.K., 698 N.E.2d 845, 847 (Ind.

9

Ct. App. 1998) (holding evidence supported trial court's conclusion that father had ability to provide financial support to child where father was voluntarily unemployed).

Next, to the extent Father suggests that he did not have a legal obligation to provide financial support to T.W. prior to the paternity determination, that issue is well settled. As we explained in Irvin v. Hood, 712 N.E.2d 1012, 1014 (Ind. Ct. App. 1999):

> Indiana law imposes upon a parent the duty to support his children. See State v. Taylor, 625 N.E.2d 1334, 1335 (Ind. Ct. App. 1993). This duty exists apart from any court order or statute. In re S.T., 621 N.E.2d 371, 373 (Ind. Ct. App. 1993). In In re Adoption of T.H., we held that it was not necessary that an out-of-wedlock child's paternity have been established in order to commence the one-year period in which the father had to communicate with the child in order to avoid adoption of that child without the natural father's consent. 677 N.E.2d 605, 607 (Ind. Ct. App. 1997). We find Irvin's situation analogous. Irvin signed a paternity affidavit after J.J.I. was born acknowledging he was the child's natural father. Thus, Irvin had the duty to support J.J.I. from the time of the child's birth.[] Irvin's failure to provide support for a child whom he acknowledged as his own establishes that he has failed to support his child "as required by law or judicial decree." Ind. Code § 31-19-9-8(a)(2)(B) (emphasis added). Thus, his consent was not necessary for Hood to adopt J.J.I. See In re Adoption of A.M.K., 698 N.E.2d 845, 847 (Ind. Ct. App. 1998) (affirming trial court's decision to dispense with natural father's consent in an adoption proceeding under similar circumstances).

(Emphases added, footnote omitted). Here, it is undisputed that Father acknowledged T.W. as his child at the time of T.W.'s birth, and that acknowledgement established his common law duty to support T.W.

Father also asserts that "[h]aving found that [Father] was unable to provide support during the period of his incarceration, the trial court's conclusion that [Father's] consent is not necessary precariously hinges on 'the period prior to his incarceration and for the months since his release to home detention.'" Brief of Appellant at 22. Father then proceeds to point out errors in the facts underlying the trial court's findings relevant

10

to Father's post-incarceration circumstances. But, even assuming that the Father is correct regarding the alleged errors, there is clear and convincing evidence that during the first two years of T.W.'s life, prior to Father's incarceration, he had the ability to provide financial support for T.W. and failed to do so.[1] That evidence is sufficient to support the trial court's conclusion that his consent to the adoption is not required under Indiana Code Section 31-19-9-8(a)(2)(B).

Finally, Father contends that "[d]ispensing with [his] consent on these facts and circumstances is contrary to public policy and the interests of justice and fairness." Brief of Appellant at 24. But Father does not support that contention with cogent argument, as he does not support his argument with references to a specific public policy or citations to any legal authority whatsoever. Regardless, as our supreme court has aptly stated:

> This Court has emphasized that "courts must be careful to avoid substituting their judgment for those of the more politically responsive branches," Sanchez v. State, 749 N.E.2d 509, 516 (Ind. 2001), and that "[i]n our separation of powers democracy, the constitution empowers the legislative branch to make law." Baldwin v. Reagan, 715 N.E.2d 332, 337-38 (Ind. 1999). It is clear that "[t]he legislature has wide latitude in determining public policy, and we do not substitute our belief as to the wisdom of a particular statute for those of the legislature." State v. Rendleman, 603 N.E.2d 1333, 1334 (Ind. 1992).

Fraley v. Minger, 829 N.E.2d 476, 492 (Ind. 2005).

---

[1] Father is incorrect that the period of time relevant to the issue of financial support is limited to the one year immediately preceding the adoption petition. While Indiana Code Section 31-19-9-8(a)(1) explicitly requires that an abandonment by a parent have occurred within the six months immediately preceding the date of the filing of the adoption petition, no such restriction is included in the subsection relevant to this matter, namely Section 31-19-9-8(a)(2)(B). To the extent that our opinion in In re Adoption of M.B., 944 N.E.2d 73, 78 (Ind. Ct. App. 2011), can be read to support such an interpretation of the statute, that was not intended. To be clear, the plain language of the statute indicates that any one-year period of time is appropriately considered by the trial court in determining failure to communicate or failure to provide financial support.

Affirmed.[2]

KIRSCH, J., and MAY, J., concur.

---

[2] In his Amended Reply Brief, Father contends that the trial court was required to find or conclude that "terminating [Father's] parental rights is in the best interests of T.W." and that the court's failure to so find or conclude constitutes error. Amended Reply Brief at 11. But, while the trial court must consider T.W.'s best interests in considering Stepfather's adoption petition, there is no best interests element in Indiana Code Section 31-19-9-8, which is the only relevant statute at issue in this appeal. Accordingly, Father's best interests argument must fail.