**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jul 22 2013, 6:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ADAM C. SQUILLER**
Squiller Law Office, P.C.
Auburn, Indiana

ATTORNEY FOR APPELLEE:

**LATRIELLE WHEAT**
Angola, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ADOPTION OF: | ) | |
| A.H. and N.H., minor children, | ) | |
| | ) | |
| D.H., | ) | |
| | ) | |
| Appellant-Respondent | ) | |
| | ) | |
| vs. | ) | No. 17A03-1302-AD-34 |
| | ) | |
| A.C.H., | ) | |
| | ) | |
| Appellee-Petitioner | ) | |

APPEAL FROM THE DEKALB CIRCUIT COURT
The Honorable Kirk D. Carpenter, Judge
Cause No. 17C01-1208-AD-18

**July 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

D.H. ("Natural Mother") appeals the grant of A.C.H.'s ("Stepmother's") petition to adopt Natural Mother's daughter and son, A.H. and N.H. Indiana law permits trial courts, under carefully enumerated circumstances, to dispense with the requirement that a parent consent to the adoption of her child. Such is the case here. Natural Mother failed to communicate significantly with her children for a period of more than one year, despite being able to do so. Her efforts at communication were, at best, token. For this reason, the trial court correctly determined that her consent to the adoption was not required. We affirm.

**Facts and Procedural History**

Natural Mother and Father divorced in 2007. Father was awarded physical custody of the children and Natural Mother was granted parenting time. The trial court ordered both parents to complete a parenting class called Right Relations. Father completed the class in 2008. By 2009, despite the trial court's prodding, Natural Mother had not completed the class. As a result, the court suspended her parenting time. *See* Appellant's App. p. 82. Two months later, the trial court indicated it was considering granting Natural Mother supervised parenting time. *Id.* at 86 ("the issue of supervised parenting time remains under advisement until the Court receives a report from [A.H.'s] therapist."). But in April 2009, the trial court indicated that the parties "wanted to try and work out [the parenting-time] issue themselves . . . ." *Id.* at 100.

The parties reached some agreement, and Natural Mother had parenting time on May 25, 2009. But after that date, she never saw the children again. Tr. p. 82. She last

spoke to the children by phone in August 2009. Meanwhile, Father remarried and Stepmother took an active role in the children's lives.

In December 2010, after more than a year had passed since she had communicated with the children, Natural Mother sent Christmas gifts to the children at their elementary school. In November 2011, having not seen or spoken to the children in more than two years, Natural Mother sent Father a letter specifying dates on which she planned to have parenting time and asked him to drop the children off at a "halfway point," a local coffee shop. Petitioner's Exh. 3. Father responded to her by mail, but his letter was returned as undeliverable.

Stepmother filed a petition to adopt the children in December 2011. At the hearing on the adoption petition in November 2012, Natural Mother admitted that she had not seen or spoken to the children since 2009, but she noted that she had sent them Christmas gifts in 2010. Tr. p. 83. She also claimed to have written many letters to the children, *id.* at 71, 84, and called Father repeatedly to request parenting time, but she said he ignored her calls. *Id.* at 64, 71. Natural Mother also admitted that she had never completed the court-ordered parenting class. *Id.* at 133.

Father's testimony directly contradicted Natural Mother's. He testified that he had not moved or changed his phone number since his divorce from Natural Mother. *Id.* at 9, 23. He said that Natural Mother had never tried to contact him by phone and that she had not mailed any letters to the children before Stepmother filed her adoption petition in late 2012.[1] *Id.* at 26, 42-43. Father also said that Natural Mother had never participated in

---

[1] Father admitted that he refused mail from Natural Mother after filing the adoption petition. Tr. p. 42.

3

any of the children's school activities, such as parent-teacher conferences or extra-curricular activities. *Id.* at 39. Stepmother also testified that Natural Mother had never contacted her regarding the children. *Id.* at 150.

The trial court took this conflicting evidence under advisement. In January 2013, the trial court ruled that Natural Mother's consent to the adoption was not required. The court concluded that Natural Mother had abandoned the children for at least six months before the adoption petition and had not communicated significantly with them—despite being able to do so—for a period of at least one year. Appellant's App. p. 348. Any attempts Natural Mother made to communicate with the children were "at best[,] only token efforts." *Id.* Finding that adoption was in the children's best interests, the trial court granted Stepmother's petition.

Natural Mother now appeals.

**Discussion and Decision**

Natural Mother argues that the trial court erred in concluding that her consent for the adoption of her children was not required pursuant to Indiana Code section 31-19-9-8.

We will not disturb a trial court's decision in an adoption proceeding unless the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *In re Adoption of M.A.S.*, 815 N.E.2d 216, 218 (Ind. Ct. App. 2004). We will not reweigh the evidence, but instead we will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *Id.* We presume that the decision of the trial court is correct, and it is the appellant's burden to overcome that presumption. *Id.*

4

The most protected status in any adoption proceeding is that of the natural parent. *In re Adoption of N.W.*, 933 N.E.2d 909, 913 (Ind. Ct. App. 2010) (citing *Stout v. Tippecanoe Cnty. Dep't of Pub. Welfare*, 182 Ind. App. 404, 395 N.E.2d 444, 449 (Ind. Ct. App. 1979)). Recognizing the fundamental importance of the parent-child relationship, our courts have strictly construed the statute to preserve that relationship. *Id.* However, even the status of the natural parent—though a material consideration—is not one that will void all others, and under carefully enumerated circumstances, Indiana law allows trial courts to dispense with parental consent and allow adoption of the child.

> Consent to a child's adoption is not needed from:
>
> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
> > (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> > (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Ind. Code §§ 31-19-9-8(a)(1), (2). Subsection (b) of this statute further provides that "[i]f a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent." Here, the trial court concluded that Natural Mother abandoned the children at least six months before the adoption petition because she had made, at best, token efforts to be a part of their lives. Appellant's App. p. 348. The court also found that Natural Mother had failed to

communicate significantly with the children for more than a year, despite being able to do so.[2] *Id.*

The evidence supports the trial court's conclusions. Natural Mother last saw the children in May 2009 and spoke with them by phone in August 2009. She sent Christmas gifts to the children's school in late 2010, but at this point, she had not communicated with the children in more than a year.[3] Nearly another year passed before Natural Mother sent a letter to Father demanding parenting time, and at that point—November 2011— more than two years had passed since Natural Mother had communicated with the children.

Natural Mother acknowledges that "the record is clear [she] did not communicate with the children in the year preceding the filing of the [adoption] petition," but argues that she could not do so because Father and Stepmother thwarted her efforts. Appellant's Br. p. 11. At trial, she testified that Father ignored her phone calls and that she wrote many letters to the children. Father, however, testified that she never called or wrote letters to the children. We may not reweigh the evidence on appeal, and to the extent Natural Mother's testimony is in direct conflict with Father's, we must view the evidence

---

[2] The provisions of Indiana Code section 31-19-9-8 are disjunctive; therefore, they each provide independent grounds for dispensing with parental consent. *In re Adoption of T.W.*, 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006). Here, because the trial court's findings regarding abandonment and communication are factually intertwined, we address both.

[3] The record shows that in 2009, Natural Mother filed petitions to modify custody and establish parenting time, both of which alleged that Father was preventing her from seeing and speaking to the children. However, this Court has held that "[c]ourt action does not constitute communication." *In re the Matter of Ryan L.*, 435 N.E.2d 624, 626 (Ind. Ct. App. 1982). And the trial court, faced with conflicting testimony from Natural Mother and Father regarding Natural Mother's efforts to communicate with the children, rejected Natural Mother's argument that Father and Stepmother had thwarted her efforts to communicate with the children. We may not reweigh the evidence underlying that claim. *In re M.A.S.*, 815 N.E.2d at 218 (We do not reweigh evidence; instead, we view the evidence in the light most favorable to the judgment).

in the light most favorable to the trial court's judgment. We reject Natural Mother's invitation to conclude that her failure to communicate with the children is the fault of Father and Stepmother.

Natural Mother argues that "an additional impediment to [her] having contact with the children was the restrictive nature of the parenting[-]time orders . . . ." *Id.* at 12. She claims her parenting time was suspended in early 2009 and never reinstated, which meant she had "no legal authority to require [] communication [with the children]." *Id.* Although the trial court acknowledged that it had not reinstated Natural Mother's parenting time, Appellant's App. p. 344 (finding no. 14 & 15, previously leaving the parties to resolve the issue), Natural Mother's argument is unpersuasive. She could have asked the court to reinstate her parenting-time rights, but after 2009, she never did. Instead, she let nearly two years pass without communicating significantly with the children.

Natural Mother did not engage in any significant communication with the children for a period of at least one year despite being able to do so. And as the trial court found, the efforts Natural Mother made, such as sending gifts to the children's school, were token at best. Thus, we conclude that the trial court did not err in concluding that Natural Mother failed to communicate significantly with her children and abandoned them; as a result, her consent to the adoption was not necessary.

Affirmed.

KIRSCH, J., and PYLE, J., concur.