ATTORNEYS FOR APPELLANT

Barry Chambers
Jennifer Hubartt
Office of General Counsel
Marion County Office Department of Child Services
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Steven Litz
Monrovia, Indiana



# In the
# Indiana Supreme Court

No. 29S02-0904-CV-140


IN THE MATTER OF THE ADOPTION
OF INFANTS H.,

MARION COUNTY DIVISION OF
INDIANA DEPARTMENT OF CHILD SERVICES,                 *Appellant (Plaintiff below),*

v.

S. M.,                                                 *Appellee (Defendant below).*


Appeal from the Hamilton Superior Court, No. 29D03-0504-AD-510
The Honorable William J. Hughes, Judge


On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-0611-CV-1018


**April 8, 2009**

**Shepard, Chief Justice**.


This appeal arises from an order of adoption granted to a New Jersey resident for children brought to Indianapolis for their birth to a South Carolina woman who had been inseminated with biological material from California. The adoption petitioner asked the trial court to waive various legislative safeguards designed to protect infants who are proposed for adoption. We reverse.

**Facts and Procedural History**

Twin girls whom we will call Infants H were born at Methodist Hospital in Indianapolis in early April 2005, and a few days later, on April 13, attorney Steve Litz filed a petition for adoption on behalf of a man we will call Petitioner. The petition described the children as "white females" and asserted that Petitioner was an Indiana resident, born in Indiana, and employed as a teacher. The woman who gave birth, 23-year-old Zaria, attached an affidavit saying that she was inseminated with combined sperm from Petitioner and an unknown donor, and that she was waiving her rights with regard to the newborns.

The trial court held a hearing on the same day the petition was filed. Petitioner testified on his petition. He indicated that Zaria had been inseminated with sperm from him and from another donor. (Apr. 13, 2005, Tr. at 5-6.) He said he was "currently residing in Indianapolis" but worked as a school teacher in Union City, New Jersey. The court indicated orally it would approve the adoption. It released the children to Petitioner pending a final hearing and declared that the statutory requirement of prior written approval of a licensed placement agency or the Marion County Office of Family and Children (Ind. Code § 31-19-7-1) was being waived.

Litz subsequently provided the court with a document called an "Adoption Summary" prepared by "Paralegal on Call, Inc.," generated on April 27th. The report indicated that the babies were born prematurely, but were progressing, and that they were "not considered 'hard to place' as defined by I.C. § 31-9-2-51." The report indicated that Petitioner was born in New York (not in Indiana, as the petition to adopt had alleged). (Appellant's App. at 213.) It said Petitioner had lived for the last ten years in an apartment in Union City. (Id. at 214.) (The Indianapolis residence alleged in the adoption petition turned out to be a hotel.) The report said the mother was a 23-year-old Caucasian. The trial court received the report and issued an adoption order two days later on April 29th.

In the meantime, personnel at Methodist Hospital's Newborn Intensive Care Unit became concerned "about [Petitioner's] ability to appropriately care" for the Infants H and asked Child Protective Services at the Marion County Office of Family and Children (now the Department of

2

Child Services) to investigate. (Exhibits Vol. I, Ex. A at 8.) That office reported to the Marion Superior Court, Juvenile Division, that Petitioner had appeared in the ICU carrying a bird, which hospital personnel thought represented a risk of infection. On a separate occasion he had come to visit with bird feces on his clothing, "with no concern [for] the children's health and potential disease that could spread." Id.

Petitioner told the hospital staff that he planned to drive the two three-pound premature infants back to New Jersey in his automobile, alone, and had not yet thought about how he would manage for their care while he worked. The Marion Superior Court determined that the infants were in need of services and ordered them in the custody of the Office of Family and Children, on May 2nd. Among other things, the court observed that the requirements of the Interstate Compact on the Placement of Children, Ind. Code ch. 31-28-4, were not being followed. (Appellant's App. at 129-30.)

Alerted to the CHINS investigation, attorney Litz moved on May 4th to amend the adoption court's order to add a finding that the children where hard to place, as defined by Ind. Code § 31-9-2-51(1)(B), on grounds that Zaria was African-American and that the children were therefore biracial. (Id. at 185-86.) This motion was neither supported by affidavit nor otherwise verified under penalties of perjury.

Actually, it turned out that Zaria had received donor eggs, so the grounds on which Litz asserted the children to be biracial were untrue. (Id. at 54.) The earlier representation that Petitioner was a sperm donor likewise turned out to be untrue. (Tr. at 115.)

The adoption judge's effort to deal with these successive shifting factual claims was understandably daunting. The court observed that the petition to adopt and counsel's subsequent submissions reflected "lack of candor and mass confusion of crucial factors. . . ." (Appellant's App. at 54.) We have not undertaken here to detail each twist in the road. Suffice it to say that in July 2005, the trial court vacated the original decree of adoption and an amended version that had been entered *Nunc Pro Tunc*. (Id. at 165-66.) In November 2005, Petitioner's lawyer moved again to amend the petition for adoption, and requested a final hearing. (Id. at 68-70.)

3

This time, he asserted that the infants were hard to place because they were part of a sibling group, citing Ind. Code § 31-9-2-51(2). (Id.)

In January 2006, the adoption court held its last hearing. It ordered a six-month period of supervision over the placement of the infants with Petitioner. (Id. at 45-59.) It entered a final decree of adoption on October 17, 2006. (Id. at 4-5.) The trial court contemporaneously dismissed the CHINS case and found that consent to adoption by the Department of Child Services was not required. (Id.) The Court of Appeals affirmed. In re Adoption of Infants H., 878 N.E.2d 331 (Ind. Ct. App. 2007). We grant transfer.

## I.     Nonresident Adoption of Nonresident Children

The Department's appeal requests a declaration that Indiana courts do not have authority to grant adoption requests made by non-residents for children who are not residents. (Appellant's Br. at 16-17.) It cites the general provision of our adoption statute that a resident may file to adopt a child in Indiana, Ind. Code. § 31-19-2-2 (2008), with its exception allowing non-residents to adopt children in Indiana if the children qualify as "hard to place." Ind. Code § 31-19-2-3 (2008). This exception applies to children who are *disadvantaged because of*: ethnic background; race; color; language; physical, mental or medical disability; or age; or members of a sibling group that should be placed in the same home. Ind. Code § 31-9-2-51 (2008) (emphasis added).

Residency does matter as respects the delicate question of adopting a child. The place where the adoptive parent is a resident will be in the best position to evaluate whether the parent can provide suitable living conditions for the child. For many of the same reasons, it is more difficult for an Indiana court to evaluate whether adoption by a non-resident is in a child's best interest. The legislative judgment is that this challenge must sometimes be undertaken in the interest of arranging a suitable permanent living situation for Indiana's hard to place children.

The Department's position that the General Assembly has not authorized Indiana courts to entertain petitions by non-residents to adopt non-resident children by enacting Ind. Code § 31-19-2-3 has considerable force. A number of problems make this case a difficult one in which to

4

resolve that question: the convoluted nature of the submissions of counsel, the delay associated with sorting them out in the trial court and on appeal, and the potential effect on the Infants H. A declaration that there is no subject matter jurisdiction, after all, would put two small children into legal limbo. The Department recognizes this problem in its Petition to Transfer. Accordingly, we leave open the residency question and address instead several other issues important to the protection of adoptive children.

## II. Venue Is Important

The General Assembly has enacted venue requirements for adoptions. The directive is largely the same for resident and non-resident petitioners. For residents, venue lies in (1) the county where the petitioner resides, (2) the county in which the licensed child placing agency or governmental agency having custody of the child is located, or (3) the county where the child resides. Ind. Code § 31-19-2-2. When the petitioner is a non-resident, venue lies only in the last two of these locations. Ind. Code Ann. § 31-19-2-3. This enactment reflects the desirability of access to full information and services proximate to the location of children. While venue is not jurisdictional, courts should still observe the directives of the statute. See id.

Whatever else may be tortured about this litigation, it is unquestioned that none of the participants were residents of Hamilton County. The disconnect between the adoption proceedings and the CHINS proceedings as respects Infants H underscores the importance of honoring the legislative judgment about venue. Faced with situations like the instant case, the adoption court should transfer the matter to the county where the children are located.

## III. DCS Consent to the Adoption

The General Assembly has required that before a child may be placed in a proposed adoptive home, the Department of Child Services or a child placing agency licensed by the Department must give prior written approval. Ind. Code § 31-19-7-1(a) (2008). It seems obvious enough that this legislative directive is designed to protect children, certainly including infants like those who are the subject of this case. The evidentiary grounds for waiving this

5

requirement, a request made at the very first hearing, consisted of the following exchange before the adoption court:

Litz: Okay. You're also asking the Judge to waive the requirement for a home study before the children are placed with you, correct?

Petitioner: Yes.

Litz: Now as it turns out because of the timing it's probably likely that we're going to have a home study done anyway, but in the event that we don't, we're asking the Judge to waive that requirement, correct?

Petitioner: Yes.

(Apr. 13, 2005, Tr. at 7.)

Because the CHINS proceedings gave DCS knowledge about the pending adoption, it was later able to intervene in the adoption court. Otherwise, it could not have done so. Dispensing with the Department's statutory role before the Department even knew of the adoption, based solely on the Petitioner's request, was error.

## IV. Compliance with the Interstate Compact

Among the most important safeguards for children, whom it is contemplated will be sent to live with adoptive parents in another state, is the Interstate Compact on the Placement of Children. The Department contends that the adoption court did not comply with the Compact. Counsel for Petitioner does not dispute this.

Both Indiana and New Jersey are parties to the Compact. Our General Assembly has embraced the large objectives of the Compact, two of which are ensuring that the appropriate authorities in a state where a child is to be placed "have full opportunity to ascertain the circumstances of the proposed placement" and providing the sending state with "the most complete information on the basis of which to evaluate a projected placement before the placement is made." Ind. Code § 31-28-4-1 (2008) (article I). The operational elements of the Compact function as follows:

6

(a) A sending agency[1] may not send, bring, or cause to be sent or brought into any other party state a child for placement in foster care or as a preliminary to a possible adoption unless the sending agency complies with each requirement under article III and with the receiving state's laws governing the placement of children.

(b) Before sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state. The notice shall contain the following:

    (1) The child's name, place, and date of birth.

    (2) The identity and address or addresses of the child's parents or legal guardian.

    (3) The name and address of the person, agency, or institution to or with which the sending agency proposes to send, bring, or place the child.

    (4) A full statement of the reasons for the proposed action and evidence of the authority under which the placement is proposed to be made.

(c) A public officer or agency in a receiving state that receives a notice under paragraph (b) of article III is entitled, upon request, to receive additional information necessary to carry out the purpose and policy of this compact from the sending agency or any other appropriate officer or agency of or in the sending agency's state.

(d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.

Ind. Code § 31-28-4-1 (article III).

---

[1] The definitions of a "sending agency" include a court of a party state, a person, or any other entity that sends or brings a child to another party state. Ind. Code § 31-28-4-1 (article II).

The conditions for placement set forth in article III of the Compact are designed to provide complete and accurate information regarding children and potential adoptive parents from a sending state to a receiving state and to involve public authorities in the process in order to ensure children have the opportunity to be placed in a suitable environment. See Ind. Code ch. 31-28-4 (article I, article III).

The adoption court was on the right track when it indicated early on that it would not grant the adoption without *complete* Compact compliance. (Tr. at 8-9.) The Department's office in Marion County set this process in motion by notifying Indiana's central Compact office, which requested New Jersey's Compact office to evaluate Petitioner's suitability as an adoptive parent. New Jersey officials contacted Petitioner, who declined to participate, saying that he was a resident of Indiana. (Exhibits Vol. I, Ex. A at 10.) The adoption court appointed a guardian *ad litem*, who supplied a home study from a person in New Jersey, but there is nothing in the record that the adoption court had been notified in writing by New Jersey state authorities that the "proposed placement does not appear to be contrary to the interests of the child." Ind. Code § 31-28-4-1 (article III). Indeed, the Adoption GAL never expressed an opinion on whether the adoption was in the best interests of the Infants H, though she did testify that she saw no reason the court should not grant the adoption. (Tr. at 209, 222-23; Appellant's App. at 9-35.)

Indiana retains jurisdiction over the Infants H because of the Compact. Article V of the Compact governs jurisdiction and provides as follows: "The sending agency shall retain jurisdiction over the child sufficient to determine all matters relating to the custody, supervision, care, treatment and disposition of the child, which the sending agency would have had if the child had remained in the sending agency's state…" Ind. Code § 31-28-4-1 (article V). See In the Matter of C.B., 616 N.E.2d 763 (Ind. Ct. App. 1993).

**Conclusion**

We reverse the final order of adoption for want of compliance with the Interstate Compact and remand with directions to comply with the Compact, and thereafter to issue further

8

judgment accordingly.  The order granting Petitioner preliminary custody may remain in effect pending completion of this directive and such eventual order as the trial court may enter.


Dickson, Sullivan, and Boehm, JJ., concur.
Rucker, J., concurs in result.