**In re the Matter of the ADOPTION OF: S.A., Minor Child,**

**M.H. and C.H. and Indiana Department of Child Services, Appellants,**

v.

**C.R., Appellee–Cross–Petitioner.**

**No. 49A02–0906–CV–549.**

Court of Appeals of Indiana.

Dec. 31, 2009.

Bryan Lee Ciyou, Ciyou & Dixon, P.C., Indianapolis, IN, Attorney for Appellants.

Richard A. Mann, Richard A. Mann, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-petitioner M.H. and C.H. and appellant Indiana Department of Child Services (DCS) (collectively, the appellants) appeal the denial of their motion to correct error after the probate court denied M.H. and C.H.'s petition to adopt S.A. and granted appellee-cross-petitioner C.R.'s petition to adopt. Specifically, the appellants argue that the adoption decree cannot stand because the findings were incomplete, the probate court did not enter any findings regarding DCS's consent to the adoption, and C.R. failed to present sufficient evidence satisfying the requirements for interstate adoption, and that the evidence was clear and convincing that M.H. and C.H.'s petition to adopt S.A. should have been granted. Concluding that the evidence was sufficient to support the probate court's granting of the adoption petition in favor of C.R., and finding no other error, we affirm.

## FACTS

V.A. (hereinafter referred to as Biological Mother) gave birth to S.A. on March 5, 2005, in Marion. Immediately thereafter, S.A. aspirated meconium and was transported to Fort Wayne's Children's Hospital. Six days later, DCS removed S.A. from Biological Mother's care and placed S.A. in a foster home with M.H. and C.H. Because of the hospitalization, DCS filed a Child In Need of Services (CHINS) petition.

After learning that S.A. had been placed in foster care, C.R.—who had ultimately adopted Biological Mother's teenage children—contacted DCS and requested that S.A. be placed with her. However, DCS informed C.R., who lived in Chicago, that such placement would not occur because the initial plan was for reunification with Biological Mother.

Sometime in 2006, the permanency plan was changed to adoption because Biological Mother was unable to complete the services that DCS offered and she could not provide a stable lifestyle to care for S.A. In late 2006 or early 2007, a permanency plan was developed for S.A.'s placement with C.R. because Biological Mother's other children were living with her.

On May 18, 2006, DCS filed a petition to sever the parental rights of Biological Mother and S.A.'s alleged biological father. Following a hearing, their parental rights of custody and control of S.A. were terminated on January 4, 2007. However, prior to the final hearing, Biological Mother attempted to consent to C.R.'s adoption. Biological Mother knew that C.R. had provided her other children with a loving and caring home, where they had succeeded in school and in extracurricular activities. DCS representatives informed Biological Mother that she could only give consent to C.R. if she also consented to an adoption by M.H. and C.H. However, because Biological Mother did not want to consent to M.H. and C.H.'s adoption of S.A., Biological Mother withheld her consent from both parties.

Thereafter, DCS changed the original plan to adoption with M.H. and C.H., because S.A. had been living with them. C.R. and the teenage children had several supervised visits in Indiana with S.A. during the CHINS, termination, and adoption proceedings.

On July 24, 2007, M.H. and C.H. filed their adoption petition. C.R. then filed a cross-petition for adoption on November 20, 2007. DCS entered its consent for M.H. and C.H. to adopt S.A. on February

15, 2008. Thereafter, on April 24, 2008, DCS filed an adoption summary, with an evaluation and recommendation stating: "It is the recommendation of the [DCS] that M.H. and C.H. become the legal parents for S.A." Appellant's App. p. 50–55.

After hearing evidence on the competing adoption petitions on December 10, 2008, the probate court took the matter under advisement. The evidence showed that C.R. is financially capable of supporting S.A. Moreover, it was established that S.A.'s biological siblings who live with C.R. participate in extra-curricular activities, play musical instruments, regularly spend time together as a family, and are excellent students.

M.H. and C.H. have had twenty-three different foster children in their home over the past four years. Neither M.H. nor C.H. could remember the names of many of the foster children who had lived with them. C.H. has been treated for depression, and both she and M.H. are unemployed and were not able to provide proof as to their ability to support S.A.

On May 29, 2009, the probate court issued an order, granting the adoption in favor of C.R. In particular, the probate court determined:

> 18. That [C.R.] has adopted [D.R.] and [J.R.] and is the foster parent of [K.E.] and all three are half siblings to [S.A.].
> 19. That in a Parenting Assessment completed by Barbara Brands of the Children's Bureau dated 10/3/07, Ms.

Brands concludes that [S.A.] does appear to be bonded to [C.R.] and her siblings.

> 21. That Anthony Moya, Family Case Manager ... at DCS, stated in his Petitioner's Answers to Intervenors Interrogatories dated October 5, 2007, that it is in [S.A.'s] best interest to live in the home with her siblings.

> . . .

> 24. That [C.R.] testified that [S.A.] would be able to interact with her mother's biological family as they are invited to attend special family functions held at her home.

> . . .

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

> 1. The Court finds that it is in the best interest of [S.A.] to be adopted by the Cross–Petitioner, [C.R.] and the Court orders this Petition for Adoption set for final hearing.
> 2. The Court denies the Petition for Adoption filed by [M.H. and C.H.].

*Id.* at 19–20. This appeal now ensues.[1]

### DISCUSSION AND DECISION[2]

#### I. Standard of Review

 In general, when an adoption has been granted, we consider the evidence

---

1. The probate court granted the appellants' motion to stay the adoption order on June 19, 2009, pending the resolution of this appeal.

2. The Appellants filed a "Motion to Strike C.R.'s Appellee's Appendix in its Entirety," a "Motion to Strike References to Appellee's Appendix in Appellee's Brief," and/ or in the Alternative to "Strike Paragraphs in Appellee's Brief That Rely Upon Appellee's Appendix." On December 4, 2009, this court ordered those motions held in abeyance to be ruled upon by the writing panel to which this case is assigned. We now grant the appellants' motion to strike with regard to the factual materials that were not properly before the probate court. We decline to consider those materials for purposes of deciding this appeal. *See Binder v. Benchwarmers Sports Lounge,* 833 N.E.2d 70, 73 n. 1 (Ind.Ct. App.2005).

most favorable to the trial court's decision and the reasonable inferences that can be drawn therefrom to determine whether the evidence is sufficient to support the judgment. *Irvin v. Hood,* 712 N.E.2d 1012, 1013 (Ind.Ct.App.1999). We will not disturb the trial court's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *Id.*

### II. The Appellants' Contentions

#### A. Incomplete Findings

The appellants contend that the adoption decree must be set aside because "it is devoid of certain statutory findings required of any final order in adoption." Appellants' Br. p. 10. More specifically, the appellants maintain that the trial court failed to make specific findings regarding S.A.'s adoption that are set forth in Indiana Code section 31–19–11–1.

Pursuant to Indiana Code section 31–19–11–1:

(a) Whenever the court has heard the evidence and finds that:

(1) the adoption requested is in the best interest of the child;

(2) the petitioner or petitioners for adoption are of sufficient ability to rear the child and furnish suitable support and education;

(3) the report of the investigation and recommendation under IC 31–19–8–5 has been filed;

(4) the attorney or agency arranging an adoption has filed with the court an affidavit prepared by the state department of health under IC 31–19–5–16 indicating whether a man is entitled to notice of the adoption because the man has registered with the putative father registry in accordance with IC 31–19–5;

(5) proper notice arising under subdivision (4), if notice is necessary, of the adoption has been given;

(6) the attorney or agency has filed with the court an affidavit prepared by the state department of health under:

(A) IC 31–19–6 indicating whether a record of a paternity determination; or

(B) IC 16–37–2–2(g) indicating whether a paternity affidavit executed under IC 16–37–2–2.1; has been filed in relation to the child;

(7) proper consent, if consent is necessary, to the adoption has been given;

(8) the petitioner for adoption is not prohibited from adopting the child as the result of an inappropriate criminal history described in subsection (c) or (d); and

(9) the person, licensed child placing agency, or county office of family and children that has placed the child for adoption has provided the documents and other information required under IC 31–19–17 to the prospective adoptive parents; the court shall grant the petition for adoption and enter an adoption decree.

In light of the above, it is apparent that the trial court must find certain factors to exist before *granting* a petition to adopt. I.C. § 31–19–11–1(a). In this case, findings were not entered as to the particular factors listed in the statute and the record reflects that the trial court weighed the evidence and determined that it is in the best interest of S.A. to be adopted by C.R. In our view, the probate court was clarifying that as between the parties—the appellants and C.R.—the adoption by C.R. was in S.A.'s best interests. The probate court then denied the adoption petition filed by the appellants and set the matter for final hearing at a later date. Under these circumstances, we cannot say that

the trial court should have included specific findings of fact and conclusions of law with regard to the provisions set forth in Indiana Code section 31–19–11–1 in *denying* the appellants' adoption petition. As a result, the claim that the adoption decree was erroneous on this basis fails.

### B. DCS's Consent

The appellants also maintain that the adoption decree must be set aside because the record does not support DCS's consent to the adoption. More specifically, the appellants contend that "the DCS properly consented to adoption in M. & C.H. and objected to adoption by C.R." Appellant's Br. p. 25. Thus, the appellants essentially urge that DCS's decision to consent to M.H. and C.H.'s consent should dictate the outcome.

■ Pursuant to Indiana Code section 31–19–11–1(a)(7), the trial court must find that "proper consent, *if consent is necessary*, to the adoption has been given." (Emphasis added). Although consent is required from the agency having lawful custody of the child whose adoption is sought, consent is not required if the legal guardian or lawful custodian has failed to consent for reasons found by the court not to be in the best interests of the child. I.C. § 31–19–9–8(a)(10). Moreover, once consent is given, it cannot be withdrawn without filing a motion with the trial court. I.C. § 31–19–10–1(c). Also, consent cannot be revoked arbitrarily because there must be a specifically stated reason why it is in the best interest of the child to revoke consent. *In re Adoption of A.S.,* 912 N.E.2d 840, 849 (Ind.Ct.App.2009).

■ Notwithstanding the appellants' contentions, this court has determined that the best interest of the child is the paramount concern in any adoption case. *Stout v. Tippecanoe County Dep't. of Pub. Welfare,* 182 Ind.App. 404, 411, 395 N.E.2d 444, 448 (1979). The trial court is solely responsible for making the determination of what is in the best interest of the child guided by the factors—including consent—that are set forth in the adoption statute. I.C. § 31–19–11–1. In other words, DCS is not granted with the unbridled discretion to refuse consent. As we observed in *Stout:*

> When parental rights are terminated, the Department, as custodian of the adoptive child, occupies an important role in the adoption process. The Department becomes in loco parentis to its ward in order to find a suitable adoptive home, and by its expertise, aid the trial court in determining the child's best interest. The ultimate decision as to the child's best interest, however, rests with the trial court. *See Johnson v. Cupp,* (1971) 149 Ind.App. 611, 274 N.E.2d 411. We therefore hold the Department's power to withhold consent to adoption, regardless of the means by which the Department obtained custody, is qualified by IC 31–3–1–6(g), allowing the trial court to dispense with the consent of a guardian or custodian.

*Stout,* 182 Ind.App. at 414, 395 N.E.2d at 450–51.

■ As discussed above, DCS initially consented to C.R.'s request for adoption. Tr. p. 19, 235, 435, 461–62. Thereafter, DCS decided to withdraw its consent to permit M.H. and C.H. to adopt. *Id.* at 238–39. During the hearing on the adoption petitions, the DCS case manager could not explain why DCS had withdrawn its consent for C.R. to adopt S.A. *Id.* Moreover, the case manager could not identify any information that would warrant the DCS's determination that C.R.'s home may have been inappropriate for S.A. *Id.* at 242.

In light of the above, C.R. did not need DCS's consent for her petition for S.A.'s adoption to be granted because DCS failed to consent for reasons that were not in the best interest of S.A. *See* I.C. § 31–19–9–8(a)(10). Moreover, as discussed *infra,* the evidence supported the probate court's determination that adoption by C.R. was in S.A.'s best interest. Thus, M.H. and C.H.'s contention that the adoption decree must be set aside on the grounds that "DCS properly consented to adoption in M. & C.H." fails. Appellant's Br. p. 27.

## C. Compliance with Interstate Compact on the Placement of Children

The appellants next argue that the adoption decree must be set aside because S.A.'s adoption did not comply with the provisions of the Interstate Compact on the Placement of Children (ICPC), as set forth in Indiana Code section 31–28–4–1.

The elements of the ICPC, Article III, provide that

> (a) A sending agency [3] may not send, bring, or cause to be sent or brought into any other party state a child for placement in foster care or as a preliminary to a possible adoption unless the sending agency complies with each requirement under article III and with the receiving state's laws governing the placement of children.
>
> (b) Before sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state. The notice shall contain the following:
>
> (1) The child's name, place, and date of birth.
>
> (2) The identity and address or addresses of the child's parents or legal guardian.
>
> (3) The name and address of the person, agency, or institution to or with which the sending agency proposes to send, bring, or place the child.
>
> (4) A full statement of the reasons for the proposed action and evidence of the authority under which the placement is proposed to be made.
>
> (c) A public officer or agency in a receiving state that receives a notice under paragraph (b) of article III is entitled, upon request, to receive additional information necessary to carry out the purpose and policy of this compact from the sending agency or any other appropriate officer or agency of or in the sending agency's state.
>
> (d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.

I.C. § 31–28–4–1.

■ Our Supreme Court has recently observed that the ICPC is "among the most important safeguards for children, whom it is contemplated will be sent to live

---

**3.** A "sending agency" means:
(1) a party state or a party state's officer or employee;
(2) a subdivision of a party state or the subdivision's officer or employee;
(3) a court of a party state;
(4) a person;
(5) a corporation;
(6) an association;
(7) a charitable agency; or
(8) any other entity. . . .
I.C. § 31–28–4–1(b).

with adoptive parents in another state." *In re Adoption of Infants H.*, 904 N.E.2d 203, 207 (Ind.2009). Moreover, the conditions for placement set forth in the ICPC are meant to provide complete and accurate information to the sending state to ensure that children are placed in a suitable environment. *Id.* In addition, without complete compliance with ICPC, an adoption would not be granted. *Id.* In *Infants H.*, the receiving state had failed to notify the court that the "proposed placement does not appear to be contrary to the interest of the child." *Id.* As a result, the final order of adoption was set aside and the cause was remanded for compliance with the ICPC. *Id.*

■ In this case, the probate court determined that it was in S.A.'s best interests to grant C.R.'s petition for adoption. Appellant's App. p. 17–21. After granting the petition, the probate court issued a subsequent order directing C.R. to obtain an updated home study and to comply with all requirements of the ICPC. *Id.* at 14–15.

The Marion County DCS initiated a referral to the ICPC regarding C.R.'s petition for the adoption of S.A. Tr. p. 435, 461. Prior to that referral, the Illinois Department of Children & Family Services (IDCFS) had completed two positive home studies on C.R.—one in December 2007, and the other in September 2007. After the most recent home study was conducted in the Summer of 2009, the IDCFS recommended that S.A. should be placed with C.R. for the purpose of adoption.

In our view, the IDCFC's written report that C.R. filed in the probate court clearly satisfied the requirement that the receiving state—Illinois—notify in writing the sending state "that the proposed placement does not appear to be contrary to the interest of the child." *In re Adoption of Infants H.*, 904 N.E.2d at 207.

The appellants have offered no evidence to support their contention that C.R. is not in compliance with the ICPC. Moreover, the first time that any issue was raised regarding C.R.'s alleged noncompliance with the ICPC was after the probate court entered its Order denying M.H. and C.H.'s petition. As a result, it is apparent that C.R. has established by clear and convincing evidence that all ICPC requirements were satisfied.

### D. Hard to Place Child

In a related issue, the appellants argue that the adoption decree must be set aside because C.R. did not have standing to file an adoption petition because she was a nonresident of Indiana. In particular, the appellants assert that the residence exceptions that are set forth in Indiana Code section 31–19–2–3 do not apply in these circumstances.

We note that a person has standing to adopt a child under eighteen if he or she is a resident of Indiana. I.C. § 31–19–2–2. However, an individual who is a non-resident of Indiana is granted an exception to the residency standing requirement to adopt a "hard to place child." I.C. § 31–19–2–3. A "hard to place child" is defined as "a child who is or children who are disadvantaged: (1) because of: (A) ethnic background; (B) race; (C) color; (D) language; (E) physical, mental, or medical disability; or (F) age; or (2) because the child or children are members of a sibling group that should be placed in the same home." Ind.Code § 31–9–2–51.

■ In this case, M.H. and C.H. admitted—in their own pleadings—that S.A. is a "hard-to-place child pursuant to Indiana Code section 31–9–2–51 for the reason that the child is disadvantaged because of race and age. . . ." Appellant's App. p. 22–25. As a result, M.H. and C.H. are judicially estopped from now repudiating their con-

tention that S.A. is a "hard to place child." *See Plaza Group Props., LLC v. Spencer County Plan Comm'n,* 911 N.E.2d 1264, 1269 (Ind.Ct.App.2009) (holding that judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one that the party previously asserted).

██ Notwithstanding this conclusion, before a child will be found to be a "hard to place child," it must be determined that the child is "disadvantaged." In accordance with Indiana Code section 31–9–2–51, if the child fits into any of the statutory categories set forth above, the child is in the category of a "hard to place child."

As noted above, it is clear that S.A. fits into one of the statutory categories, as M.H. and C.H. had specifically alleged. I.C. § 31–9–2–51. Moreover, the evidence established at the adoption hearing that S.A. is a member of a sibling group that should be placed together.

C.R. and S.A. are both African Americans. Appellant's Br. p. 17–21. C.R.'s evidence demonstrated that she has the life experiences of being an African American, and that she is able to bring those life experiences to help S.A. understand what it means to be an African American and how to handle potential situations where she might be treated differently or inappropriately. Tr. p. 354–55.

A clinical supervisor for Bethany Christian Services admitted that there are statistics suggesting that African American children adopted by Caucasian families are more likely to have problems. Tr. p. 174. The supervisor testified that there are several organizations that advocate that if an African American family is willing and able to adopt an African American child, they should receive preference over a Caucasian family. *Id.* at 175.

The evidence also established that S.A. has bonded with her biological siblings who currently reside with C.R. Tr. p. 22, 300, 303, 314. Moreover, even DCS determined that it was in S.A.'s best interest to live with her siblings, and DCS wanted to promote that bond. Cross–Petitioner's Ex. B, C.

In considering this evidence, we conclude that S.A. has met the requirements of a "hard to place child" in accordance with Indiana Code section 31–9–2–51. Thus, for these additional reasons, M.H. and C.H.'s contention that C.R. did not have standing to file a petition to adopt S.A. fails.

### E. Sufficiency of the Evidence

Finally, the appellants maintain that the evidence presented at the hearing was insufficient to deny their request to adopt S.A. Put another way, M.H. and C.H. argue that the probate court should have found in their favor because the evidence unequivocally established that granting their petition was in S.A.'s best interests.

██ In addition to the standard of review set forth above, when reviewing a probate court's ruling in an adoption case, we will not reweigh the evidence but instead will examine the evidence most favorable to the probate court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *In re Adoption of A.S.,* 912 N.E.2d at 851. The appellant bears the burden of overcoming the presumption that the probate court's decision is correct. *Id.* In sum:

> After all of the consents and other required documents have been filed and all the evidence has been presented, when the court finds, among other things, that the adoption requested is in the best interests of the child and proper consent, if consent is necessary, has been given, the court shall grant the petition

for adoption and enter an adoption decree.

*Id.* at 849.

In this case, the evidence presented at the December 10, 2008, hearing established that C.R. is able to support S.A. financially. Tr. p. 219, 332. Moreover, S.A.'s biological siblings who live with C.R. do well in school, aspire to attend college in the Chicago area, and spend time together as a family. *Id.* at 296–99, 307–08, 311–14, 316–17, 320–24. S.A. has also interacted with her siblings on a number of occasions.

In contrast, M.H. and C.H. have had twenty-three different foster children in their home over the past four years. *Id.* at 88–93, 143. They could not remember the names of many of the children, and they could not provide proof as to their financial ability to support S.A. *Id.* at 84, 131–34, 140–41.

Although M.H. and C.H. presented evidence establishing that they were "the only family S.A. knows," that they would continue to provide for S.A.'s needs, and that they were not "prohibited from adopting due to criminal history," appellants' Br. p. 27–28, their request to set aside the adoption order in C.R.'s favor and enter judgment for them amounts to a request for us to reweigh the evidence, which we will not do. *Adoption of H.N.P.G.*, 878 N.E.2d 900, 903 (Ind.Ct.App.2008), *trans. denied.* Thus, after reviewing the evidence, we conclude that the probate court properly determined that granting the adoption in C.R.'s favor was in S.A.'s best interest.

The judgment of the probate court is affirmed.

BAILEY, J., and ROBB, J., concur.