# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**BRUCE D. BRATTAIN**
**MARIO GARCIA**
Brattain & Minnix
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF N.W.R., | ) | |
| | ) | |
| M.R. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 36A01-1109-AD-407 |
| | ) | |
| R.B. and R.B. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE JACKSON CIRCUIT COURT
The Honorable William E. Vance, Judge
Cause No. 36C01-1009-AD-26

**July 10, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

M.R. appeals the trial court's order granting a petition to adopt N.W.R. (or "the child") filed by Rg.B. and Rb.B. ("Foster Parents") following an evidentiary hearing. M.R. presents the following issues for review:

1.  Whether the trial court abused its discretion when it denied a motion filed by the Indiana Department of Child Services ("DCS") to withdraw its consent to the adoption by Foster Parents.

2.  Whether the trial court abused its discretion when it granted Foster Parents' adoption petition.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

N.W.R. was born on November 15, 2009, and is the biological son of B.T. and J.R. When N.W.R. was seventeen days old, DCS filed a petition alleging the child to be a child in need of services ("CHINS") and placed him with Foster Parents.[1] On December 3, 2009, the trial court adjudicated N.W.R. to be a CHINS.

Shortly after DCS placed N.W.R. with Foster Parents, M.R., the child's biological paternal aunt ("Aunt M.R."), learned that the child had been removed from his biological parents. In December 2009, Aunt M.R. asked DCS to place the child with her in East Chicago. N.W.R.'s three older siblings had already been placed with her. Those siblings were five years old, four years old, and three years old at the time of the instant final adoption hearing. DCS did not change the child's placement from Foster Parents' home and later informed Aunt M.R. that the child's permanency plan was reunification with the

---

[1] At some point Aunt M.R. requested to have the child placed with her. But DCS personnel told her that the goal was reunification and Aunt M.R.'s residence was too far to participate easily in services toward that goal.

biological parents. DCS also told Aunt M.R. that N.W.R.'s biological maternal aunt had expressed an interest in adopting the child.

Aunt M.R. persisted in contacting DCS and, in early 2010, the department agreed to allow Aunt M.R. and the siblings to have visitation with N.W.R. beginning May 2010. Short visitations began that month in Lebanon. By November 2010, the visitations had increased to weekend visitation, and by the time of the December 9, 2010, hearing, Aunt M.R. had visited N.W.R. for at least 200 hours.

The parental rights of N.W.R.'s biological parents were terminated by September 2010, at which time Foster Parents filed a petition to adopt the child. DCS executed its consent to the adoption on September 15, 2010. But thirty days later, on October 14, DCS filed a motion to intervene in the adoption proceedings and a motion to withdraw its consent. At a hearing on December 6, the trial court granted DCS' motion to intervene and heard evidence on its motion to withdraw consent. On December 9, Aunt M.R. filed a petition to adopt N.W.R. On December 9, the trial court consolidated the competing adoption petitions and heard additional evidence on DCS' motion to withdraw consent. On December 22, the trial court issued its order denying DCS' motion to withdraw consent.

On July 11, 2011, the trial court held a final hearing on the consolidated adoption petitions. On August 5, the court issued its decree granting Foster Parents' petition to adopt N.W.R. Aunt M.R. now appeals.

## DISCUSSION AND DECISION

### Standard of Review

In general, when an adoption has been granted, we consider the evidence most favorable to the trial court's decision and the reasonable inferences that can be drawn therefrom to determine whether the evidence is sufficient to support the judgment. In re Adoption of S.A., 918 N.E.2d 736, 740-41 (Ind. Ct. App. 2009), trans. denied. We will not disturb the trial court's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. Id.

However, Foster Parents have not filed an appellee's brief. Thus, we will not undertake the burden of developing arguments for the appellee. Painter v. Painter, 773 N.E.2d 281, 282 (Ind. Ct. App. 2002). Applying a less stringent standard of review, we may reverse the trial court if the appellant establishes prima facie error. Id. Prima facie error is defined as at first sight, on first appearance, or on the face of it. Id.

### Issue One: Withdrawal of Consent to Adoption

Aunt M.R. first contends that the trial court abused its discretion when it denied DCS' motion to withdraw consent. Here, N.W.R. became a ward of DCS when he was determined to be a child in need of services on December 16, 2009. Thus, DCS had a statutory duty to make recommendations to the trial court regarding what placement and services would be in N.W.R.'s best interests. Ind. Code chs. 31-34-1 through -25. That obligation continues through the adoption phase of the child's wardship. See Ind. Code § 31-19-8-5 (requiring county DCS to file report of its investigation and recommendation

4

as to adoption petition regarding adoption of a child in need of services).  As this court has observed,

> the best interest of the child is the paramount concern in any adoption case. <u>Stout v. Tippecanoe County Dep't. of Pub. Welfare</u>, 182 Ind. App. 404, 411, 395 N.E.2d 444, 448 (1979).  The trial court is solely responsible for making the determination of what is in the best interest of the child guided by the factors—including consent—that are set forth in the adoption statute. I.C. § 31-19-11-1.  In other words, DCS is not granted with the unbridled discretion to refuse consent.  As we observed in <u>Stout</u>:

>> When parental rights are terminated, the Department, as custodian of the adoptive child, occupies an important role in the adoption process.  <u>The Department becomes in loco parentis to its ward in order to find a suitable adoptive home, and by its expertise, aid the trial court in determining the child's best interest</u>.  The ultimate decision as to the child's best interest, however, rests with the trial court.  <u>See</u> <u>Johnson v. Cupp</u>, (1971) 149 Ind. App. 611, 274 N.E.2d 411.

> <u>Stout</u>, 182 Ind. App. at 414, 395 N.E.2d at 450-51.

<u>In re Adoption of S.A.</u>, 918 N.E.2d at 742 (emphasis added).  In other words, while the determination of the child's best interests is ultimately in the hands of the trial court, DCS' job is to assist the court in that decision first by investigating which course of action is in the child's best interests and then by giving its opinion on that issue.

Additionally, a trial court deciding an adoption petition must find that "proper consent, if consent is necessary, to the adoption has been given."[2]  Ind. Code § 31-19-11-1(a)(7).  The consent required, if any, is set out in Indiana Code Section 31-19-9-1(a), which provides that,

---

[2] Consent is not required if the legal guardian or lawful custodian has failed to consent for reasons found by the court not to be in the best interests of the child.  Ind. Code § 31-19-9-8(a)(10).  The parties do not contend that consent to the adoption is not required in this case, and the trial court made no such finding in this case.

5

[e]xcept as otherwise provided by [Indiana Code chapter 31-19-9], a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by the following:

(1)    Each living parent of a child born in wedlock . . . .
(2)    The mother of a child born out of wedlock and the father of a child whose paternity has been established . . . .
(3)    <u>Each person, agency, or county office of family and children having lawful custody of the child whose adoption is being sought</u>.
(4)    The court having jurisdiction of the custody of the child if the legal guardian or custodian of the person of the child is not empowered to consent to the adoption.
(5)    The child to be adopted if the child is more than fourteen (14) years of age.
(6)    The spouse of the child to be adopted if the child is married.

(Emphasis added).[3]  Once consent is given, it can only be withdrawn by the filing of a motion in the trial court.  Ind. Code § 31-19-10-1(c).  The party seeking to withdraw consent must prove by clear and convincing evidence that withdrawal is in the best interest of the child.[4]  <u>See</u> Ind. Code § 31-19-10-3(1).

Here, on September 15, 2010, DCS executed a written consent to N.W.R.'s adoption by Foster Parents.  But then, on October 14, DCS filed its motion to intervene in the adoption proceedings, which motion the trial court granted, as well as a motion to withdraw its consent.[5]  On December 6 and 9, the trial court held an evidentiary hearing on the motion to withdraw consent.  The director of the Jackson County DCS testified

---

[3]  Under Indiana Code Section 31-19-9-2(3), a person who executed a written consent may not execute a subsequent consent to have another person adopt the child unless one or more of the circumstances set out in the statute applies.  However, DCS "may execute more than one (1) written consent to the adoption of a child if the department determines that the execution of more than one (1) written consent is in the best interests of the child."  Ind. Code § 31-19-9-2(f).

[4]  Indiana Code Section 31-19-10-3 sets out restrictions to the withdrawal of consent, none of which apply in this case.

[5]  There is no copy of DCS' motion to withdraw consent in the record on appeal.  We rely solely on the transcript for the bases asserted by DCS in support of the motion.

6

that DCS sought to withdraw consent because the department "had received information that there may be an option of a relative [who] had the other children [N.W.R.'s siblings who] was more interested than [the director had] understood at the time [when he] originally signed the consent for [Foster Parents] to adopt." December 6 Transcript at 9. The director further testified that he had served as director since 1987, that this was "probably the first" time that the department had sought to withdraw consent, and that the department was seeking withdrawal in order to "fully explore the best interests of" N.W.R. Id. at 13, 14. The director also testified that the department had no reason to think that adoption by Foster Parents was not in the child's best interest, nor was the department committing to the position that adoption by Aunt M.R. was definitely in the child's best interest. Rather, the department "would not want to rule out a relative that has shown interest [and] has [N.W.R.'s] three (3) siblings in her household[.]" Id. at 17.

On December 22, the trial court denied DCS' motion to withdraw consent. The court's order states in relevant part:

> [N.W.R.] was born on November 15, 2009[,] and has lived with [Foster Parents] since he was 2 ½ weeks old. It is the only home he has had. His placement in the home of [Foster Parents] was done by [DCS]. In the management of [N.W.R.'s] situation and as required by law the Department formulated a permanency plan. That plan called for the adoption of [N.W.R.] by [Foster Parents]. Nothing changed in [Foster Parents'] relationship with each other. Nothing changed in [Foster Parents'] home. Nothing changed in the Department's Opinion, " . . . that [Foster Parents] are able to provide a safe, <u>stable</u>, loving, <u>consistent</u> environment for this little boy.["] (see Home Study Addendum for Foster Parent Adoption filed in this cause on September 30, 2010[,] emphasis added).
>
> Now the [D]epartment wishes to withdraw the consent to adoption and contest the adoption it determined was the best permanent result for [N.W.R.] The stated reason by the Department's director was to explore

other options. For [N.W.R.] this means his permanency plan was a temporary permanency plan and his life, moving to stability is rendered ambiguous.

The Court is not persuaded by clear and convincing evidence that it is in [N.W.R.'s] best interest that the Department of Child Services be allowed to withdraw the Department's consent to the adoption of [N.W.R.] by [Foster Parents]. Motion denied.

Appellant's App. at 5 (emphases in original).

The trial court discounted DCS' stated reason for seeking to withdraw consent, namely, the desire to investigate whether adoptive placement with a biological relative was in N.W.R.'s best interests. But DCS informed the court that it had not discharged its obligation to investigate fully what placement would be in the child's best interests, and the department sought only to complete its work and fulfill its obligation. The trial court denied the motion primarily on the ground that the withdrawal constituted, according to the trial court, a change in N.W.R.'s permanency plan that rendered the same "a temporary permanency plan" and made "his life, moving to stability . . . ambiguous." Id.

While "permanency" is a long-term goal, a permanency plan is not fixed and unchangeable. The legislature has provided for both the creation and modification of permanency plans. Initially, DCS may choose any of several possible permanency plan placements for a child in need of services, such as return to the child's parent or guardian; placement with another responsible adult, such as an adult sibling, a grandparent, or other relative; appointment of a legal guardian; placement of the child for adoption; or placement in "another planned, permanent living arrangement." Ind. Code § 31-34-21-7.5. A child's permanency plan shall be re-evaluated to determine whether an existing permanency plan must be modified. See Ind. Code § 31-34-21-7(a), (b)(6). And with

8

regard to adoptive placement of CHINS, the legislature has provided for the withdrawal of consent if that is in the best interests of the child. Ind. Code § 31-19-10-3. Thus, the relevant statutes clearly contemplate modification of a child's permanency plan.

Again, the paramount interest in adoption and CHINS cases is the best interests of the child. Further investigation by DCS in this case will take time that may appear contrary to that ultimate goal by delaying permanency and stability for the child. But here, whether through miscommunication or inadequate communication within the Jackson County DCS, the department's director executed a consent to adoption without having fully investigated an adoptive placement with a relative who had consistently expressed an interest in placement of the child with her and who has since adopted N.W.R.'s three older siblings. And DCS' regional director testified at length about studies supporting adoptive placement with a child's relative.[6] When the director realized that the department had not investigated a viable adoptive placement with a relative of the child, he asked to withdraw the previously executed consent, not to consider a hypothetical alternative placement but to investigate a viable placement with a relative and N.W.R.'s siblings. In other words, DCS did not merely change its mind but confessed that it had failed in its statutory duty to investigate placement alternatives and, in effect, repudiated its consent. See Ind. Code § 31-19-8-5. As such, DCS informed the court that it had not given proper consent to the adoption, see Ind. Code §§ 31-19-11-1(a)(7), 31-19-9-1(a), and we conclude that that reason satisfies the clear and convincing

---

[6] As discussed in Issue Two, we express no opinion as to which prospective adoptive placement in this case is in N.W.R.'s bests interests, although we include instructions for making that determination on remand.

9

evidence test to show that withdrawal is in the best interest of the child. See Ind. Code § 31-19-10-3(1). Aunt M.R. has met her burden to show prima facie error on this issue.

The trial court's concern with the child's stability is entirely appropriate. But N.W.R. is a ward of DCS, and, again, DCS has a statutory duty to take whatever action it deems to be in the child's best interest, acting "in loco parentis." In re Adoption of S.A., 918 N.E.2d at 742. Here, DCS sought to withdraw consent to Foster Parents' adoption of N.W.R. for the sole purpose of investigating whether adoptive placement with Aunt M.R., who has already adopted the child's three older siblings, would be in N.W.R.'s best interests.

Here, DCS had the integrity to declare on its own initiative that it had failed to meet its statutory duty. And this notice by DCS that its investigation was incomplete went directly to the heart of the adoption because it is the court's responsibility to determine the best interests of the child based upon a full investigation of credible placement alternatives. The court's ruling against DCS' motion to withdraw its consent affected the substantial rights of the parties and was not harmless. See Ind. Trial Rule 61. Thus, we hold that the trial court erred when, on these facts, the court denied DCS' request to withdraw its consent to the Foster Parents' adoption of N.W.R.

**Issue Two: Adoption**

Aunt M.R. also contends that the trial court abused its discretion when it granted Foster Parents' petition to adopt N.W.R. Again, when an adoption has been granted, we consider the evidence most favorable to the trial court's decision and the reasonable inferences that can be drawn therefrom to determine whether the evidence is sufficient to

10

support the judgment.  In re Adoption of S.A., 918 N.E.2d at 740-41.  And we will not disturb the trial court's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion.  Id.

Here, the trial court issued a decree granting Foster Parents' petition for adoption ("Decree").  In the Decree the trial court found in relevant part as follows:

2. That the determinants of an adoption are set forth in [Indiana Code chapter] 31-19-11.  Among the determinants listed are (1) that the adoption requested is in the best interest of the child; (2) the petitioner or petitioners for adoption are of sufficient ability to rear the child and furnish suitable support and education; and (3) that proper consent, if any be necessary to the adoption[,] has been given.

3. DCS is the appropriate party to consent to the adoption of [N.W.R.] as the biological parent[s'] parental rights have been terminated as of the date of the final hearing on the adoption ([Indiana Code chapter] 31-9-9).

4. Relatives have no preferential right to adopt in the State of Indiana.  In Re Adoption of B.C.S., 793 N.E.2d 1054 (Ind. Ct. App. 2003).

5. The best interests of the child is the paramount concern in any adoption case.  Stout v. Tippecanoe County Department of Public Welfare, 395 N.E.2d 444, 448 (Ind. Ct. App. 1979).

6. The court is solely responsible for making the determination of what is in the best interests of the child guided by the factors—including consent—that are set forth in the adoption statute [Indiana Code Section] 31-19-11-1.  In Re the Adoption of S.A., 918 N.E.2d 736, 742 (Ind. Ct. App. 2009), trans. denied.

7. The [Foster Parents] have proven by clear and convincing evidence that it is in the best interests of [N.W.R.] for their petition to be granted.

Appellant's App. at 12-13.

DCS' consent to N.W.R.'s adoption was required by Indiana Code Section 31-19-9-1(a)(3).  But, as discussed above, we have determined that the trial court erred when it denied DCS' request to withdraw consent to Foster Parents' adoption of N.W.R.  The parties do not argue, nor did the trial court make a record to show, that consent is not

11

required.  See Ind. Code § 31-19-9-8(a)(10).  Because we hold that the trial court should have granted DCS' motion to withdraw its consent, it necessarily follows that the trial court entered the Decree without the consent required by statute.  As such, the Decree is invalid.  Therefore, we must reverse the Decree and remand.

## Conclusion and Instructions on Remand

DCS discovered that it had failed in its statutory obligation to conduct a complete adoptive placement investigation.  When DCS acknowledged that failure and moved to withdraw its previous consent to adoption, the trial court denied the motion.  We conclude on these facts that the motion to withdraw consent was made for good cause and in the best interests of the child and that the trial court abused its discretion when it denied the motion.

The DCS county director testified that he had learned after he had executed the consent that a relative of N.W.R., who was adopting N.W.R.'s three older siblings, was seriously interested in adopting N.W.R. and was a credible placement alternative indicating that further investigation was needed.  And DCS' regional director testified about the benefits of placement with a child's siblings and that placement with Aunt M.R. was in the child's best interests.

In sum, while Aunt M.R. is only required to show prima facie error in this case, the evidence from DCS clearly and convincingly shows that withdrawal of DCS' consent was in the best interests of the child in order to allow DCS to investigate Aunt M.R. as an adoptive placement and, thereby, better to inform the court in its determination of the best interests of the child.  We hold that where, as here, before an adoption decree has been

entered, the agency acting in loco parentis moves to withdraw its consent because it has failed in its statutory obligation to conduct a complete placement investigation, the presumption that its initial consent was proper is nullified. See Ind. Code § 31-19-11-1(a)(7).

In light of our conclusion that the trial court erred when it denied DCS' motion to withdraw consent, the Decree was issued without the consent required by statute. As such, the Decree is invalid and we must reverse the Decree and remand with instructions. Upon completion of the investigation of Aunt M.R. as a potential adoptive placement, DCS shall execute and file its report and recommendation regarding placement with Aunt M.R., pursuant to Indiana Code 31-19-8-5, and its consent to adoption either by Aunt M.R. or the Foster Parents or by both.[7] The trial court shall then reconsider the evidence from the July 11, 2011, hearing on the cross-petitions for adoption, together with DCS' report on Aunt M.R. and any newly executed consent or consents. The trial court shall review the evidence de novo to determine which adoptive placement is in the best interests of the child, giving due consideration to the evidence showing that these siblings should be placed together. The court shall not consider the passage of time or maintenance of the status quo dispositive, which would only vitiate this appeal and remand. The trial court shall enter an adoption decree that includes findings of fact to support its decision.

Reversed and remanded with instructions.

RILEY, J., and DARDEN, J., concur.

---

[7] Again, Indiana Code Section 31-19-9-2(f) allows DCS to file more than one consent if it determines that execution of more than one consent is in the best interests of the child.